1    David Mungai Njenga

2    1623 E. J. STREET, SUITE 5, D2      **DETAINED**
   Tacoma, WASHINGTON 98421      PRO SE

3    **IN THE UNITED STATES DISTRICT COURT FOR THE**

4         **NORTHERN DISTRICT OF CALIFORNIA**

5             **AT OAKLAND**

6    In the Matter of      )   **Case No.**
                         )   **A# 91-73-8632**

7    David Mungai Njenga      )   **Emergency motion for humanitarian**
                         )   **release to enable petitioner see his**

8       Petitioner,      )   **parents before they die and**
                         )   **Petition For Bail Hearing**

9    V.      )   **Pursuant To Kim v. Zigler**
                         )

10    A Neil Clark,      )
                         )

11       Respondent.      )
                         )

12                          )

13                          )

## MOTION

14      Comes now petitioner David Mungai Njenga a detainee at

15    Northwest Detention Center at Tacoma, Washington proceeding

16    PRO SE and MOVES THIS court to recommend a bond hearing and in

17    support hereof I state,

18    1) I have six United States citizen children and my wife is a

19    citizen of the United States

20    2) I am willing to pay a reasonable bond and be on supervised

21    parole.

22    3) My mother who is a legal permanent resident is so seriously

23    sick and I would like to be able to visit her at the hospital.

24    4) I am not subject to any criminal prosecution for failure to

25    depart from the United States.

1

# PROCEDURAL HISTORY

- Petitioner entered United States on March 2nd 1979 when he fled Kenya for fear of being persecuted following the death of President Jomo Kenyatta and after being named in the change the constitution group.

- Petitioner was targeted for his political contribution (see book title changed the constitution. Upon entering, the United States petitioner wrote two books-**my Daughter in Washington and child of two worlds, has co-authored Devil on the cross.**

- Sometime in 1992, I applied for asylum withholding of removal convention against torture and deferral of removal.

- Sometime in 1993, I was convicted for misuse of social security number a crime involving moral turpitude and sentenced to six months imprisonment. The immigration judge administratively terminated the proceedings.

- Sometime in 1993 after serving the sentence the immigration judge reopened the asylum proceedings granted my release on a five thousand (5,000) bond. A series of hearings were conducted between 1993 and 1997 and I never failed to appear on any one-time let the record show.

- Some in 1996 the immigration judge granted my brother john Mbitu asylum but continued my case for a new merits hearings after the tape recorder malfunctioned.

- On October 23rd 1997, I visited the state of Washington for a business meeting as the president of sunset employment services and to attend a funeral.

- On that material day, an argument occurred between petitioner and one Mr. Joel Houston who was protesting his Daughters lay-off. Mr. Houston happened to be a Seattle police officer.

- Petititioner called 911 after he noticed that Mr. Houston had a gun. Since Mr. Houston was, a police officer petitioner was arrested on fabricated frivolous charges later turned in to the former immigration and naturalization service detained and denied access to communicate with his attorney later notified that his $ 5,000 bond has been revoked.

- Petitioner retained a local Seattle attorney for bond hearing the immigration judge eventually granted petitioner bond in the amount of $ 50,000, which was tantamount to no bond as it, was so high intended to prevent petititioner from posting bond.

- Petitioner through counsel filed a timely appeal with the board of immigration appeals, before the board could render its decision on the reasonableness of such huge amount "by some miracles" petitioner was bonded out arrested by the Kenyan authorities and illegally repatriated to Kenya where he was detained and tortured and at sometime reported as dead by the Kenyan government. Petitioner was subjected to anal rape with soda bottles and petitioners daughter sexually

3

1  raped in the presence of petitioner. Petitioner's daughter
2  was 13 at the time of she was raped.

3  - Sometime in 1999 petitioner managed to return to the United
4    States using a Congo passport, a driver's license and a work
5    permit crossed the Mexican border.

6  - Sometime in June 2002, petititioner was detained at Santa
7    Rita county jail in alameda county California at the request
8    of immigration and naturalization service.

9  - On august 5th 2002 1 was transferred to Yuba county jail
10   notified of my in absentia order of deportation.

11 - On august 15th 2002 I filed a pro-se motion to reopen my
12   asylum proceedings presented my corroborating evidence, which
13   included the death announcement video tapes from **CNN**
14   affiliate **KTN** who had conducted a live interview, which was
15   televised nationwide where I was referred as the **DEAD MAN**
16   **ALIVE**. My daughter also submitted an affidavit in my support,
17   the immigration judge denied the motion to reopen citing that
18   the death announcement was not sufficient, as she could not
19   tell how it relates to petitioner the immigration judge also
20   denied the motion to reopen because my daughter failed to
21   sign her affidavit. Under the Kenyan laws, a minor is not
22   required to sign any documents although she can be sworn in
23   to tell the truth. She was willing to testify in open court.

24

25

- On December 12th 2002, the immigration judge denied the motion to reopen sent the denial order to the wrong address-hindering petitioner from knowing of the denial order.

- On February 2002, I filed a lawsuit against the Kenyan government served a copy to the Kenyan embassy in Washington DC.

- Upon receipt of the notice of the lawsuit, the Kenyan embassy hurriedly issued emergency travel documents to allow ICE to effectuate my removal so I can be taken to Kenyan and be killed. Referring to comments by on Hon Raila Ondinga.

- On March 28th petitioner filed a habeas petition in this court case # CO2-5892 SBA. see also interoffice memorandum.

- On august 2002 petitioner was arrested and detained at Santa Rita county jail Alameda county then moved to Yuba county jail then Oakland city jail then Kern county jail then to Sacramento jail and back to Oakland city jail.

- On February 28th 2003 petitioner filed a petition for a writ of habeas corpus with this court case number CO2 5892 SBA and requested an emergency stay of removal.

- The court granted petitioner the stay and appointed counsel to represent petitioner in the case.

- On April 2004, petitioners custody status was review and granted release on bond of $ 10,000 and ordered released until such time that the case would be resolved (see attached

release order). Petitioner did not violate his release conditions or commit any crimes.

- On January 12th 2007 petitioner was arrested and detained by U.S. Immigration and Custom Enforcement (ICE) and detained at northwest detention center where he currently remains until present time.

- Petitioners bond obligor was never notified even requested to surrender the alien (petitioner as promised) (see attached.)

- **Petitioner was told by the deportation officer that they arrested him because the case is pending at the ninth circuit and the court of appeals has granted stay of removal thus petitioner is being punished for seeking a judicial review.**

- Petitioner challenges that arrest and detention without a bond "as illegal unconstitutional and a violation of due process of the law.

- Petitioner has never been given an opportunity for a bond hearing he is detained without a bond.

## DISCUSSION

### JURISDICTION AND VENUE.

Federal law allows "the supreme court, any justice therof, the district courts and any circuit judge" to grant writs of habeas corpus "within their respective jurisdictions" 28 U.S.C. $ 2241(a). In 1948, relying  on the within their respective jurisdictions language the supreme court held that personal jurisdiction over a federal  habeas corpus petition lies

1    exclusively in single federal judicial district in which  both

2    the custodian  of the prisoner and the prisoner reside. See

3    Abrenas v. Clark, 335 u.s 188,190-91(1948). In Braden v.30[th]

4    judicial circuit court, 410 U.S 484(1973), the Supreme Court

5    held that the literal language of 2241 (a) required" nothing

6    more than the court issuing the writ have jurisdiction over the

7    custodian. So long as the custodian can be reached by service

8    by service of process, the court can issue the writ" within its

9    jurisdiction requiring that the prisoner be brought to

10    court...even if the prisoner  himself is confined outside  the

11    courts territorial jurisdiction "id at 495.

12    Petitioner's custodian is the district director of immigration

13    and customs enforcement in San Francisco CA.further if this

14    court grants a bond hearing that the immigration judge in

15    Sanfrancisco CA who has the jurisdiction over this matter will

16    conduct hearing. In fact, in 1997 petitioner attempted to

17    change venue for bond hearing and the sanfrancisco immigration

18    court denied that request and held bond telephonically as

19    petitioner was detained in Seattle

20    Petitioner is a resident of Oakland CA though he is detained

21    at northwest detention center Tacoma.

22

23    Due to this confusion petitioner has also filed another

24    petition with the western district of Washington

25

1  Petitioner's immigration case was held in San Francisco and the

2  case manager in this case is located in San-Francisco

3  immigration office. Further if petitioners request for bond

4  hearing is granted the bond hearing will be conducted by the

5  immigration judge in San Francisco who first heard the case

6

7  **ARGUMENT**

8     Petitioner challenges his mandatory detention pursusuant to

9  the immigration and naturalization act (INA $ 236 (C), 8 U.S, C

10  $1226 (C) which mandates his detention without bond.

11     Petitioner argues that the mandatory detention provision of

12  INA $ 236© should not be applied to him because his removal

13  proceedings were initiated before the effective date of the

14  statue, October 9th 1998 and $ 1226© violates the due process and

15  equal protection clauses of the Fifth Amendment. See Reno

16  V.Flores, 507 U.S.292, 306,123l.Ed 1,113 S.CT1439 (1993 Cui Thon

17  Ngo V.INS, 192 F.3.d 390,336 (3rd cir 1999). It is well

18  established that aliens have a right to due process under the

19  Fifth Amendment.

20     Petitioner fundamental right to liberty is

21  unconstitutionally abridged by the mandatory detention

22  provision, see Fouch 504 U.S.71 at 80,112 s.ct 1780 118 L.Ed 2.d

23  437(1992)(freedom from bodily restrain has always been at the

24  core of the liberty protected by the due process clause)quoting

25  Danh v.Demore,59 F.SUPP.2d 994,1001-5(N.D.CAL1999)mandatory

1  detention provision violates due process. See Vea Eaton

2  V.Beebe,49 F.SUPP.2nd 1186,1190 (D.OR1999)(it)Martinez

3  V.Greene,28 F.supp.2d 12775 1282-84(D.COL 1998).

4      Detention incidents to removal must bear a reasonable

5  relation to this purpose. see Demore V.Kim,538I.S.510,527

6  (2003)detention of aliens that was unquestionably removable

7  where detention lasted on an average of 47 days is reasonably

8  related to prevention of flight risk); see

9  ZadvydasV.Davis,5333U,S.678,690(U.S2001).recently, ninth circuit

10  court of appeals has held that an alien is entitled to release

11  from detention after having been detained for over six months

12  because indefinite detention does not conform with the INAs

13  mandatory detention provision and the prolonged detention period

14  violates the aliens due process right to liberty.Tijani.V.Willis

15  430F.3d 1241(9th cir 2005) per opinion of Noonan ,circuit judge

16  and opinion of Tashima,circuit judge concurring in

17  judgment).lastly length of confinement violates the due process

18  requirement of the constitution.id at 1249 (Tashima).

19  Concurring. Justice Tashima in his concurring opinion in Tijani

20  noted that ,there exists a point at which the length of

21  detention becomes so egregious that it can no longer be said to

22  be reasonably related to an alien's removal. Id at 1249. An

23  uncontested  stay of removal followed by prolonged

24  administrative detention is inconsistent with due process of

25  law.id at 1246.

1   After prolonged detention,Tijani requires the government to

2   provide the petitioner with a hearing before an immigration

3   judge where the government  must establish that the alien is a

4   flight risk or a threat to national security, and if not,

5   entitlement to release pursuant to a writ of habeas corpus .id

6   at 1242.

7       Furthermore ,the Supreme Court decision of Zadvydas

8   provides additional support to petitioner's writ. In Zadvydas

9   the Supreme Court held that the aliens cannot be subjected to

10  indefinite detention pursuant to 8 U.S.C $1231(a)(6), even if

11  they are deemed to be unlikely to comply with the order of

12  removal. See Zadvydas V.Davis, 533 U.S.678 (2001) on remand to

13  257 F.3d 1095(9th cir 2001). The Supreme Court held in Zadvydas

14  that an alien who has been ordered removed could not

15  indefinitely be held past six months period unless their removal

16  is reasonably foreseeable.id at 701.

17      Petitioner has been detained since 1997 with the exception

18  of those temporary releases and it is highly that there will be

19  an adjudication of the merits of his case within the next two to

20  three years. Pursuant to Zadvydas and Tijani petitioner should

21  be given the opportunity to fight his case outside of detention

22  and not pressured  into relinquishing his claim due to prolonged

23  indefinite detention that has now been imposed.

24      This habeas corpus proceedings under 28.U.S.$2241 concerns

25  the constitutionality of the prolonged detention of alien while

1   he waits a decision from the united states court of appeals on

2   his petition for review of a final order of removal.

3       Petitioner was released on bond and did not commit any

4   crimes and did not violate  release orders.

5       Petitioner further argues that he does not pose a risk of

6   flight as the record will show he was release on own recognance

7   during criminal proceedings and after conviction he was given

8   the opportunity to self surrender and he complied with the

9   order.

10      During asylum proceedings petitioner was always out on a $

11  5,000 attended all scheduled  hearings until 1997 when

12  miraculously was bonded out and prevented to attend his asylum

13  hearings which resulted in the in absentia deportation order of

14  1998.

15      On July 12,2007 a post order custody review of his status

16  was undertaken by DHS/ICE. No personal interview of petititioner

17  occurred with the connection with this custody review. Instead

18  ,only a file review was undertaken. The deportation officer

19  determined that detention should be continued because petitioner

20  has refused to withdraw his petition from the ninth circuit,

21  which has issued a stay of removal. (see regulation promulgated

22  at  8C.F.R4 241.4 explaining ;an alien who have filed a petition

23  for review of an order of removal but has not received a stay of

24  deportation is subject to the provision of 8 U.S.C

25

$1231.detention beyond the removal period may be maintained only

upon compliance with applicable process.

Prolonged detention raises substantial question of

constitutional dimensions. deportable aliens ,even those who

have already been ordered deported posses a substantive fifth

amendment liberty interest quoting Ly V.Hansen,351 F.3d 263,269

(6th cir 2003). Accordingly ,aliens under an order of removal are

entitled to an opportunity to be heard on the question of

prolonged detention and they may be kept locked up only if

incarceration is justified as was recognized in Ngo v. I.N.S 192

F.3d 390 397 (3rd cir 1999).

Regulations for parole have also been promulgated where a

criminal alien is held beyond  the removalperiod.see 8 C.F.R

$241.4. However, neither regulation nor statute clearly covers

an alien subject to final removal order  but whom the removal

period has been suspended by stay of removal. In Abubukar v

Ashcroft, 2004 U.S.dist Lexis 5998, # A 01-242, 2004 WL 741759,

at 3. (D.Minn.march 17th 2004 (rejecting as untenable the

argument that the alien had acted to prevent his removal by

procuring a stay of removal and directing the release of the

alien pending the outcome of his challenge to the validity of

removal order) Oyedeji v.Ashcroft,332 F.supp.2[nd] 747,753 (M.D.

P.A 2004).

The price of securing a stay of removal should not be

continuing incarceration) section 241 (a)(1)(c) contemplates

1  actions not in good faith by the alien, does not encompass

2  action taken by the alien to obtain judicial review of a

3  cognizable claim.Zadvydas recognizes the constitutional of

4  prolonged detention for those subject to a valid order of

5  removal.

6      Petitioner argues that, the price of securing a stay of

7  removal should never be unreasonable detention. the supreme

8  court in sustaining the authority of congress to mandate

9  detention of criminal aliens during administrative removal

10 proceedings, stressed that such detention will be only for a

11 brief period necessary for their removal proceedings.Demore v

12 Kim 538 U.S.510,513,155, L.Ed.2$^d$ 724,123 S.ct 1708 (2003) justice

13 Kennedy recognized that aliens could be entitled to an

14 individualized determination as to his risk of flight and

15 dangerousness if  the continued detention became unreasonably

16 unjustified, as noted above deportable aliens are also protected

17 by the substantive component of due process clause. See Ngo, 192

18 F.3d at 396.

19     Petitioner argues that he should not be effectively

20 punished for pursuing applicable legal remedies. As marked in

21 Ly,351 F.3d at 272 "an alien who would not normally be subject

22 to indefinite detention cannot be so detained merely because he

23 seeks to explore avenues of relief that the law makes available

24 to him .further ,although an alien may be responsible for

25 seeking relief, he is not responsible for time that such

1  determination may take." freedom from imprisonment from

2  government ,custody ,detention  or other ,forms of physical

3  restrains -lies at the heart of liberty that the fifth amendment

4  due process clause protects. Zadvydas,533,U.S at 690.in

5  Zadvydas,the court stated that government detention violates

6  that clause unless the detention is order in a criminal

7  proceedings with adequate procedural protections, or in certain

8  special and narrow non-punitive circumstances; where a special

9  justification such harm threatening mental illness, outweighs

10 the individual "constitutionally protected interest in avoiding

11 physical restrain." Id. The fact that alien has procured a stay

12 of removal does not undermine the bedrock principle that there

13 must be a 'special justification" outweighing the aliens

14 constitutionally protected interest liberty, as well as adequate

15 procedural protectections. To continue incarceration whiles the

16 {332 F.supp.2nd 754} alien litigates his claim.id at 690,691.

17     Petitioner states that his case is similar to those of

18 Zadvydas and Ngo, although involving different factual

19 scenarios, and stand for the proposition that where, as here,

20 detention became prolonged, special care must be exercised so

21 that the confinement does not constitute beyond the time when

22 original justification for custody are no longer tenable. "Ngo,

23 192 F.3d at 398. The stakes are high and grudging and

24 perfunctory review is not enough to justify the due process

25

1  right to liberty..."id. the assessment of flight risk and danger

2  to community must be made on current basis.id.

3      To presume risk of flight based solely on aliens past

4  record does not satisfy due process.id.at 398-99. In Ngo" the

5  court of appeals indicated that custody decisions based on a

6  file review, without any opportunity to be heard in person, is

7  inadequate "Ngo, 192 F.3d at 398.

8      Petitioner is a non-violent person a family man with a

9  responsible wife and children who are all united states citizen

10  and undoubtly he will remain the same if released on bond or

11  parole as the record will show petitioner was on bond from may

12  2005 to January 2007 no single violation even a moving ticket.

13      Petitioner does not have any displinary infractions or

14  incidents while in custody. The crimes he was convicted of

15  occurred almost 20 years ago.

16      Petitioner challenges the constitutionality of section 236©

17  and constant that, even if constitutional, section 236(c) does

18  not apply to aliens released from criminal custody before the

19  section became effective. He contends that INA $236 (C) cannot

20  apply to him for two linked reasons. first petitioner argues

21  that, by its terms section 236(c) confers no power of detention

22  on DHS/ICE unless the alien is taken into custody  when the

23  alien is released from criminal incarceration. 8 U.S.C $ 1226

24  (c)(1).by its plain language section 236 (c)does not  apply

25  retroactively to aliens released from incarceration before the

1   provisions effective date; pastor Camarena,977 F.supp at 1417-18

2   its arbitrary and capricious for DHS/ICE to interpret similar

3   transitional provision to apply to aliens released from criminal

4   incarceration before ICE took custody.

5       Definitely, the DHS/ICE attempt to reap the benefit of

6   section 236(c)by applying its mandatory detention provision to

7   aliens such as petitioner is overreaching and inconsistent with

8   the scheme established by congress.

9       As the second circuit noted "it is well settled that aliens

10  have rights of procedural due process" and that "these

11  protections extend even to aliens, whose presence in this

12  country is unlawful" Dougherty V.Thornburgh, 943 F.2d 204 209

13  (1991) quoting Mathews v.Diaz, 426 U.S. 67, 77, 96, s.ct

14  1883,1890,48 L.Ed 2d 478 (1976) executive detention is the

15  quintessential deprivation of liberty and must therefore be

16  implemented by procedures that pass constitutional muster.

17      Petitioner contends that his interest in freedom from

18  confinement is a liberty of the highest constitutional import.

19  Cabrera-Rojas V.Reno, 999 F.supp. 493,496(S.D.Y1998)

20      Petitioner argues that agency's decision makers failed to

21  provide thorough and genuinely individualized of bond

22  applications, as they systematically exaggerate the risk factors

23  militating against release on bond. Further, absent an impartial

24  decision maker, the risk that petitioner is deprived of his

25  liberty interest in freedom from confinement's substantial, and

1   unfair. As quoted in Cabrera-Rojas, 999 F.supp. At 497 also no

2   time concern of another court over DHS'practice of "cookie

3   cutter parole adjudication". There are very few, if any external

4   political checks on discretionary agency decisions predicted on

5   bias, prejudice or bureaucratic indifference where aliens are

6   involved.

7       Petitioner argues that because of this, bias prejudicial

8   and bureaucratic indifference, he has now been in the custody of

9   DHS/ICE for more than six months, at the period of time ,which

10  exceeds the length of petitioners detention on the underlying

11  criminal offense which was non violent.

12      Petitioner argues that $ 236(c) does not apply to him

13  because the DHS/ICE took him into custody after he was paroled

14  and released on bond in 2005.see Baidas v.Jenning, 123 F.supp.2nd

15  1052.U.S Dist.lexis 17993 civil no oo-cv 72003-dt (D.E

16  Mic.2000.) he says that this mandatory custody provision

17  provides that the attorney general shall take custody "when the

18  alien is released and that the DHS/ICE delay in arresting him

19  definitely places him outside the scope of $236(c).

20      Petitioner argues that the mandatory detention provisions

21  are not retroactive and do not apply to aliens whose convictions

22  predated the statue because congress included no retroactive

23  language in $236 (c)most circuit courts have been holding that

24  the plain meaning of $236 (c)applied only to aliens immediately

25

released from incarceration, not those who have been previously released and quote.

Petitioner considers that in the language used in $236, (c) congress expressed its intent and this should govern. See La guerre v, Reno, 164 F.3d 1035, 1040-41 (7th cir1980)

Petitioner contends that section $236(c) is unconstitutional because it violates substantive due process, because it implicates the fundament alright to be free from physical restrain, the **"fifth amendment guarantees"** that no person shall be deprived of liberty without due process of law. "Freedom from imprisonment, from government detention or other forms of physical restrain, lies at the heart of the liberty that due process clause protects.

Zadvydas" government detention violates the due process clause unless ordered in criminal proceedings with adequate, or in certain special and non punitive  circumstances "where a special justification outweighs the individuals constitutionally protected interest in avoiding physical restrain.Kansa v.Hendricks,521 U.S.346,356,138 L.Ed.2d 501,117 s.ct 2072 (1997)Zadvydas,533U.S.at 690.substantive due process protection from arbitrary confinement, apply to aliens, notwithstanding their residency status.id at 693 (the due process clause applies to persons within the united states, including aliens, whether their presence here is lawful,unlawful,temporary,or permanent and quote.

The third cir court of appeals has held that mandatory detention of aliens violates their due process rights unless they have been afforded the opportunity for an individualized hearing addressing the necessity of detention.Patel, 257 F.3d at 314. Petitioner, in fact, did not receive such a hearing in this case.

In out view, due process is not satisfied where the individualized custody determination afforded to petitioner was effectively a charade.

Petitioner remains indefinitely detained potentially until resolution of removal proceedings against him. This court should determine that his indefinite detention during the proceeding of removal of removal proceedings violates due process. See Koifman v.Zemski, 2001 U.S Dist.Lexis 15742, 2001 WL 1167541,*two (E.Dpa.2001). As the court in Koifman noted, even a short time before final resolution of removal proceedings will be significant, because even a short-term separation from family members is a deprivation which the Supreme Court has repeadly ranked high among the interest of individual."(quoting zgoombic v.Farquharson, 89 F.supp.2d 220,235 (D.conn.2000)."The merits of petitioner's removal case are separate and distinct from the issues raised by his indefinite detention during the tendency those proceedings. See 8.C.F.R. $3.19(d)."Consideration by the immigration judge of apllicacation of request of a respondent regarding custody or bond under this section shall be separate

1  apart form, and shall form no part of any deportation or removal

2  hearing or proceedings." Patel, 257 F.3d at 314 "the merits of

3  the aliens removal proceedings should not be conflated with the

4  determination of whether the alien should be detained pending

5  the outcome of those proceedings.2002 U.S.Dist.Lexis 15084;

6  Reyna-Guevara v.Pasquarell.June 28th 2002. Several other judges

7  have reached the same conclusion in case challenging the

8  mandatory detention under $ 1226(c) of aliens pending the

9  outcome of removal proceedings .see Sharma v.Ashcroft,158

10 F.supp.2d 524,519 (E.D.pa.2001). see U.S.v.Elwood ,20002 U.S

11 Dist.Lexis 9947,2002 WL93053(E.D.pa2002.Koifman v.Zemski,2001U.S

12 Dist.Lexis 15742,2001 WL 1167541 (E.D.PA.2001).Dean

13 v.Ashcroft,176F.supp 2d

14 316(D.N.J.2001)Juarez(E.Dpa.2000.Chukwezi v.Reno,2000U.S

15 Dist.Lexis 15432,2000WL.1372883(M.Dpa.2000)Buoyed

16 v.Holmes,74F.supp.2d 471(E.D pa.1999). In Patelv.Zemski,275 F.3d

17 299 (3rd cir 2001)Diazv.Schiltgen,946 F.SUPP.764-765 (N.D cal

18 1996)Alvarez v.Stock,956,963(9th cir 1991) they all stated ; we

19 hold that mandatory detention of aliens after they have been

20 found subject to removal but who have not yet been removed

21 because they are pursuing their administrative remedies

22 violates their due process rights unless they have been afforded

23 the opportunity for an individualized hearing at which they can

24 show that they do not pose a flight risk or danger to

25 community..

1     The fundamental requirement of due process is the

2 opportunity to be heard at a meaningful time and in a meaniful

3 manner," Mathews v.Eldridge 424 U...319, 333, 47 L.Ed.2d 18,

4 96.s.ct 893 (1976) quoting Armstrong v.Manzo, 380 U.S 545 552,

5 14 L Ed.2d 62, 65 s.ct.1187 (1965)

6     Petitioner claims that the governments systematic mandatory

7 custody, must first survive substantive due process security and

8 if pass, still must be implemented in fair manner. United States

9 v.Salermo, 481 u.s 739,746 95 L.Ed 2d 697,107 s.ct 20951987)

10     Petitioner considers that DHS/ICE detention in a civil

11 proceeding is only permissible in "certain special and narrow

12 non-punitive circumstances, where a special justification, such

13 as harm-threatening mental illness outweighs the individuals

14 constitutionally protected interest in avoiding physical

15 restrain," Even civil confinement of aliens must be limited both

16 with respect to the length of detention, see id.at 690,as well

17 to the underlying purpose justifying the detention.

18     ICE has decided to place petitioner on mandatory detention

19 under section $236(c) and with this making him ineligible to be

20 released and to remain in custody without possibility of an

21 individual bond hearing mandated by due process. This action

22 taken by DHS/ICE clearly exceeds permissible constitution

23 limits.

24     This malicious systematic way authorized by ICE denying him

25 of any possibility to pursue some kind of release from custody

1   undoable is not only unconstitutionally, prejudicial, totally

2   unfair, and irresponsible abuse of authority, but also

3   discriminatory immoral and inhumane. The economic and

4   psychological hardship caused to petitioners children who are

5   United States born citizens, is irreversible. The issue is

6   whether an alien ordered to be removed from United States, may

7   be incarcerated for prolonged period without an opportunity to

8   be heard on the matter of conditional release from confinement

9   because execution of the removal order has been stayed by a

10  judicial order. Concluding that an alien in such a circumstance,

11  has a constitutional  right to meaningful individualized

12  determination of his status pending adjudication of the validity

13  of the removal order

14       Petitioner argues that an alien in removal proceedings,"

15  should be entitled to an individualized determination as to his

16  risk of flight if the continued detention became unreasonable or

17  unjustified" id. At 532 (Kennedy J,concurring . in Ngo v.INS 192

18  F.3d 390,397,(3rd cir 1999)Pennsylvania District court

19  "recognized the applicability of these fundamental principles by

20  explaining that long term detention of an alien ordered removed

21  passes constitutional muster only if " they are adequate and

22  reasonable provisions for the grant of parole and detention is

23  necessary to prevent a risk of flight.

24       The court of appeals elaborated that the assessment of

25  flight of flight risk must be made on a current basis.id to

1  presume risk of flight based solely on an aliens past record

2  does not satisfy due process.id 398-99 furthermore an alien

3  should not be effectively punished  for pursuing applicable

4  legal remedies, such as a stay of removal.

5      As stated by the six circuit court of appeals in the Ly

6  case "an alien cannot be detained merely because he seeks to

7  explore avenues of relief that the law makes available to him.

8  Further although, although an alien may be responsible for

9  seeking relief, he is not responsible for the amount of time

10  that such determination may take. That court concludes that at

11  least "where an alien has satisfied the requirements for

12  securing a stay of removal,detention must be justified by facts

13  showing a flight risk id .at 746. In other words, an alien who

14  procured a stay of removal such as petitioner  and is facing the

15  prospect of prolonged detention pending adjudication of his or

16  her claims  is entitled to consideration for conditional

17  release. Because DHS/ICE has taken the position on that

18  petitioner is not eligible for release, it does not appear that

19  he has received the process afforded to those who are eligible

20  of release after  issuance of a final administrative order of

21  removal, therefore  DHS/ICE position that an alien ,such as

22  petitioner is ineligible for consideration for conditional

23  release is inconsistent with the constititutional command that

24  liberty can be taken away only for appropriate reasons and only

25  after the affected individual has been afforded a meaningful

1  opportunity to be heard on the appropriateness of detention. See

2  Oyedeji v. Ashcroft,332 F.supp 2d 747,753 (M.D pa.2004)the price

3  for securing a stay of removal should not be continued

4  incarceration. See also Abu baker v.Ashcroft u.s dist.lexis

5  25142 civil no 01-422 (CRT/AJB) (D.Minn 2003)Haynes v.DHS u.s

6  dist.lexis 13662 cv-05-0339 (M.D pa 2005) Zavala V.Ridge,310

7  F.supp.2d 1071,u.s dist lexis 3620 no C04- 00253(n.d cal 2004).

8      On the most recent review petitioner was notified by DRO

9  Makaena that he would not be released until resolution of his

10 review by the ninth circuit, which obviously can take years to

11 be resolved.

12     According to her that is the policy of the field District

13 Director Mr. A. Neil Clark to detain aliens as long as there was

14 bed space in the facility.

15     This presumed to be true because the outcomes of custody

16 reviews for detainees at Tacoma facility are all the same

17 respectful of support letters one provides although each

18 individual detainee is different from each other, some have

19 strong family ties others are homeless and have nowhere to if

20 released. Due process is not satisfied by rubberstamp denials

21 based on temporally diststant offenses, Ngo,192 F.3d at 398.

22     Petitioner argues that DHS/ICE not shown that petitioner

23 poses a risk of flight. As the court in Almonte-Vargas

24 v.Elwood,2003 u.s dist lexis 12387,no 02-cv-2666 (E.D.pa 2002)

25 the court stated( although petitioner may well fail in her

appeal of the immigration judges removal order," we conclude
that her continued indefinite detention during the tendency of
the removal proceedings violates due process. See Koifman
v.Zemski,2001 u.s Dist lexis 15742,2001 WL 1167541,*2(E.D pa
2001) as the court in Koifman  noted "Even a short period of
before  final resolution of her removal proceedings would be
significant because **even  a short time separation from family
members is deprivation which the  supreme court ha repeatedly
ranked highest among the interests of individual.id.**

Petitioner considers his detention unconstitutional
because he was previously granted parole by the San Francisco
ICE officer he satisfied his release orders did not commit any
crimes.

Petitioner argues that this is cruel and unusual punishment
that his parents are seriously sick and he is prevented from
seeing them in their hospital bed due this detention.

While a stay of removal may suspend the running of the
removal period, it does not toll the clock on the life of a
person held in prison awaiting adjudication of the merits of his
challenge to the validity of removal order."Oyedeji
v.Ashcroft,332 F.supp 2d 755.

This is my home I have lived here for the last 30 years  my
children needs me as much as I need them and so are my parents
who are going down hill this is the time they need me I need

1  them the most as if they go I will never see them again even if

2  down the line I get released or even become naturalized.

3      The decision by ICE to punish petitioner in a way to

4  persuade him to accepted premature deportation is the same as

5  the tactics used in Africa where petitioner came from (torture

6  until one confesses) "to a crime he never committed".

7

8                        PRAYER FOR RELIEF

9      Wherefore, petitioner respectfully prays that this court;

10     1) Assume jurisdiction over this matter.

11     2)Enjoin respondents their agents, and or subordinates from

12 continuing to detain petitioner until they have received a

13 determination from the ninth circuit court of appeals on the

14 pending petition

15     3)this court issue an order ordering petitioners immediate

16 release on reasonable terms and conditions

17     4)prevent ICE or the immigration judge from granting any

18 unreasonable bond, which would otherwise prevent petitioner from

19 posting bond $ 1500, is reasonable although petitioner might not

20 be able to raise it due to the current illness in the family.

21

22                              Respectfully submitted

23

24                              David Mungai Njenga

25

, circuit judge and   without a bond hearing which
violates the fundamental right to liberty. See Fouch 504 U.S. 71
at 80 112 S. ct 1780, 118 L. Ed 2.d 437 (1992) "Freedom from
bodily restraint has always been at the core of the liberty
protected by Due process clause" quoting Danh v. Demore, 59 F.
Supp. 2d 994, 1001-5 (N.D) (cal 1999). Detention with bond or
bond hearing is unconstitutional. See Kim v. Zigler.

It also violation Due process quoting Vea Eaton v. Beebe,
49 F. Supp 2nd cir 1186 1190 (1999). Martinez v. Greene, 28
F.Supp 2nd 1275, 1282-84 (D-Col 1998).

Prolonged detention period violates the aliens Due process
rights to liberty. Tijani v. Willis, 430 F.3d 1241 (9th cir 2005).
It also violates the Due process requirement of the constitution.

As justice, Tashima in his concurring opinion in Tijani
noted, "there exist a point at which the length of detention
becomes so egregious that it can no longer be said to be
reasonably related to an alien removal."

After prolonged detention, Tijani requires the Government to
provide the petitioner with a hearing before an Immigration Judge
where the Government must establish that the Alien is a flight
risk or a threat to the national security and if not the alien
should be released on a reasonable bond.

Furthermore, the Supreme Court decision in Davis v.
Zadvydas, the Supreme Court held that, the alien cannot be
subject to indefinite detention pursuant to 8 U.S.C. 1231 (a)

1  (6). See Zadvydas v. Davis, 533 U.S. 678 (U.S. 2001) on remand to

2  257 F.3d 1095 (9th cir2001).

3      Petitioner has been detained altogether almost five years

4  and it is highly that there will be no adjudication of the merits

5  of his case within the next one to three yars the review before

6  the ninth circuit can take up to four years.

7      Petitioner should be given an opportunity before an

8  Immigration Judge for a bond hearing.

9      On May 2007 a custody review was conducted by Department of

10  homeland security/U.S. Immigration and Customs Enforcement and no

11  personal interview was ever held instead only a file review was

12  undertaken.

13     The reviewing officer and the district director determined

14  that detention will be continued pending resolution of the case

15  by the U.S. Court of Appeal for the Ninth Circuit. See exhibit

16  (1).

17     Regulation promulgated at 8 U.S.C. § 241 states " An alien

18  who has filed petition for review of an order of removal but who

19  have not received a stay of deportation is subject to provision

20  of 8 U.S.C. § 1231." Detention beyond the removal period may be

21  maintained only upon compliance with applicable process.

22     Deportable Aliens, even those who have already been ordered

23  removed, posses a substantive Fifth Amendment liberty interest.

24  Ly v. Hansen, 351 F.3d 263, 269 (6th cir 2003). Accordingly,

25

1  aliens under an order of removal are entitled to an opportunity
2  to be heard.

3      The price of seeking justice under the law should not be
4  unnecessary incarceration. Section 241 (a) (1) (c) contemplates
5  action not taken in good faith by the alien, does not encompass
6  action taken by the alien to obtain judicial review of cognizable
7  claim.

8      Petitioner argues that the price of securing a judicial
9  review should not be a path for denial of Due process.

10     Petitioner argues that he **SHOULD NOT** be effectively punished
11 and made to suffer **psychological and economical hardship, which**
12 **will drag its effect on petitioner as well as petitioners united**
13 **states family for years to come for pursuing applicable legal**
14 **remedies**. As remarked in Ly, 351 F.3d at 279 an alien who would
15 not normally be subject to indefinite detention cannot be so
16 detained mainly because he seeks to explore avenues of relief
17 that the law makes available to him, further although an alien
18 may be responsible for seeking relief, he is not responsible for
19 time that such determination may take. Freedom from IMPRISONMENT
20 from Government, custody, detention, or other, forms of physical
21 restrain-lies at the heart of the liberty that the Fifth
22 Amendments Due process clause protects.

23     The risk of flight is non existence where an alien is
24 seeking to have legal status in the United States.

25

1    The court of Appeals indicated that custody decision based
2    solely on a file review without any opportunity to be heard in
3    person is inadequate Ngo, 192 F.3d at 398.

4    Petitioner in this case has strong family ties and entire
5    family resides in the Washington State and California bay area.

6    Petitioner did not violate any laws while out on bond and
7    order of supervised release; he does not have any disciplinary
8    infraction or incident report while in custody.

9    Petitioner argues that agency decision failure to provide
10   thorough and genuinely individualized hearings of bond
11   applications as they systematically exaggerate the risk factors
12   as quoted in Cabrera- Rojas, 999 F.Supp at 497.

13   The U.S. Court of Appeals for the Third Circuit held that
14   mandatory detention of aliens violates their Due process right
15   unless they have been afforded the opportunity for an
16   individualized hearing addressing the necessity of detention.
17   Patel 257, F.3d at 314. Petitioners have not been given such an
18   individualized hearing.

19   Most justices have reached the conclusion in cases
20   challenging the mandatory detention under 1226 (c) 241 of alien
21   pending the outcome of removal proceeding. See Sharma v.
22   Ashcroft, 158 F.Supp. 2d 524, 519 (Ed PA. 2001) U.S. v. Elwood,
23   2002 U.S. Dist. Lexis 15742 2001 WL 1167541 (ED. PA 2001) Dean v.
24   Ashcroft 176 F.Supp 2d 316 (DNJ 2001) Juarez ED 200. Chukwuezi v.
25   Reno, 2000 U.S. Dist. Lexis 15432 2000. They all stated **"We hold**

1  that mandatory detention of aliens after they have been found

2  subject to removal but have not been yet ordered removed because

3  they are pursuing their administrative remedies violates their

4  Due process right unless they have been afforded the opportunity

5  for an individualized hearing at which they can show that they do

6  not pose a flight risk or danger to community".

7      The fundamental requirement of Due process is the

8  opportunity to be heard at a meaningful time and meaningful

9  manner quoting Mathews v. Eldridge..., 424 U.S. 319, 333, 47 L

10 Ed. 2d 18, 96 S. ct 893 (1976). Armstrong v. Manzo, 380 U.S. 545

11 552, 14 L. Ed 2d 62 85 S. ct 1187 (1965). United States v.

12 Salermo, 481 U.S. 739, 746 98 L. Ed 2d 697, 107 S. ct 2095

13 (1987). Even civil confinement of alien must be limited both with

14 respect to the length of detention Id at 690, as well as to the

15 underlying purpose justifying the detention.

16     Petitioner has submitted his opening brief to the U.S. Court

17 of Appeals for the Ninth Circuit.

18 Petitioner filed for a writ of habeas corpus in the western

19 district of Washington petitioner has since learned that his

20 immigration jurisdiction lies in the San-Francisco office.

21                    **PRAYER FOR RELIEF**

22 Petitioner is about to lose his parents due to

23 illness actually the record will show that

24 petitioner has contributed his last dollar

25

1  towards the hospital bill of mother and would
2  like to be there for during her last days.
3      Wherefore, petitioner respectfully requests this court to
4  issue an order, order Department of Homeland Security, / U.S.
5  Immigration and Customs enforcement (DHS)/ (ICE) to grant
6  petitioner a bond hearing before an Immigration Judge within (7)
7  Seven days or in the alternative reinstate the original bond of
8  Five thousands U.S. Dollars ($5,000) U.S. Dollars.
9  2).Appoint counsel to represent petitioner in this matter so it
10 can be resolved amicably.
11 3.) This court has the authority to order release with or without
12 posting of bond where justice will be served.

13
14
15
16                                  Respectfully Submitted
17
18                          Dated this 30th day of October 2007
19
20                                  David M.Njenga
21 PRO SE
22
23
24
25              *PROOF OF SERVICE*

*On this day, I David .M.Njenga a detainee and a party*

*to this cause certify that a copy of this petition was*

*mailed first class postage paid*

To The Office of District Counsel.


At The Following 1000 SECOND AVENUE SUITE 2900

SEATTLE WA 98101


By: <u>First Class Mail</u> Postage paid mail, which was then

sealed and given to the Custody Officer, which is

considered properly served.

.......................
Signature

10-30-07
.......................
Date

**Opinion by:**            Procter Hug, Jr.

{374 F.3d 767} HUG, Circuit Judge:

We are called on to determine whether substantial evidence supports the Board of Immigration Appeals' ("BIA") determination that petitioner, Martin Kinyanjui **Njuguna** is ineligible for asylum and withholding of deportation. We hold that there is not substantial evidence supporting the BIA decision and accordingly grant the {374 F.3d 768} petition for review.1

### Factual Background

**Njuguna** is a citizen of Kenya who entered the United States on a visitor's visa in 1987 and overstayed its expiration. He asserts a well-founded fear of persecution because of political opinion as the basis for his asylum eligibility. Njuguna's asserted fear of persecution stems from his assisting two Kenyan women escape from the Saudi royal family's employ while they were accompanying the family on a visit to the United States.

In October 1995, the Saudi royal family approached Nicholas Biwott, a highly placed Kenyan Minister, and requested that he refer two Kenyan women who could work for the family as domestic servants. Biwott asked his own maid, Nelius Hianyu, to provide two names. Hianyu referred Eunice Musembi and Priscilla Wainjiku to Biwott as possible candidates. The two women interviewed with the royal family, a princess of which was then in Kenya, and accepted employment as a part of the princess's household. The maids accompanied the family back to Saudi Arabia.

In March 1996, Musembi wrote a letter to **Njuguna**, whom she had known in Kenya before he left for the United States. The letter stated that she and Wainjiku were treated as slaves and subjected to sexual advances from male members of the household. Musembi stated that they would be in Los Angeles soon and asked for Njuguna's help in making an escape.

The household arrived in Los Angeles in April 1996, and Musembi and Wainjiku fled the hotel and took a cab to a gas station, where they called **Njuguna**. **Njuguna** picked them up and called his attorney, Peter Chow. Chow contacted the royal family and demanded that they return the maids' passports. He threatened to publicize the maids' stories unless the Saudis promptly cooperated. The Saudis sent the passports to the Kenyan consulate. Chow, Musembi, and Wainjiku went to the consulate, where Chow again threatened a press conference unless the Kenyan officials promptly turned over the documents. On surrendering the passports, the consular official stated, in Swahili, "there will be consequences for all of you." The two women applied for and received asylum in the United States.

At the time of these events, **Njuguna** and his wife shared an apartment with Sam Tuyoit, a fellow Kenyan. Tuyoit was the son of a Kenyan magistrate and a member of the Kalenjin tribe, as were Nicholas Biwott and then Kenyan president Moi. **Njuguna** was a Kikuyu, which tribe he asserts the Moi government oppressed. **Njuguna** related to Tuyoit the maids' account of their employment and how he had assisted them. Selling Kenyans into de facto slavery was, **Njuguna** opined, another example of the Moi government's corruption. Tuyoit became incensed, accused **Njuguna** of humiliating Kenya, and moved out. **Njuguna** believes that he returned to Kenya.

Events in Los Angeles apparently had some result in Kenya. Musembi wrote to Biwott's maid, Hianyu, and related the story of her employment and escape. The letter asserted that members of a Kenyan opposition party in the United States had facilitated her rescue. Kenyan authorities intercepted the letter and Hianyu was fired, arrested, and interrogated by police. She fled Kenya and received asylum in the United States.

{374 F.3d 769} One year after the maids' escape, a man fitting Tuyoit's description appeared with police at the home of Njuguna's father.2 The man accused the senior **Njuguna** of being involved in a plot in America to defame and humiliate the Kenyan government. The police ransacked the house, arrested Njuguna's father and held him for one week. Additionally, Njuguna's family has lost jobs and land to encroaching Masai tribes, the occurrence of which **Njuguna** believes Biwott engineered. Members of the Youthwingers, a violent pro-government faction, beat Njuguna's brother and informed him that periodic punishment would continue until they could reach **Njuguna** himself. Another relative suffered a machete attack. Njuguna's family has told him not to return to Kenya as his actions have placed them all in grave danger.

### Procedural Background

The INS served **Njuguna** with a notice to appear on April 13, 1998. **Njuguna** conceded removability, but requested asylum. The Immigration Judge ("IJ") found his testimony credible, but nonetheless determined that he had not demonstrated a well-founded fear of persecution on the basis of a protected ground, and was thus ineligible for asylum. The IJ stated that **Njuguna**, while believable, based his fear on unfounded speculation. **Njuguna** submitted as evidence the testimony of Musembi and the applications pursuant to which Musembi and Hianyu received asylum. The IJ stated that Musembi's story was inherently unbelievable. Two maids, the IJ reasoned, would not know of the Saudi royal family's travel plans far enough in advance to write the letter received by **Njuguna**. The opinion also found incredible that two "at-will" employees would need to travel to Los Angeles in order to "escape." The IJ found **Njuguna** statutorily ineligible for asylum and therefore also ineligible for withholding of removal.

**Njuguna** appealed to the BIA and additionally moved to re-open his case, so that he could present evidence of his brother's shooting in Kenya. The BIA acknowledged that the IJ made no adverse credibility finding, but concluded that Njuguna's fears relied on "implausible and unsupported speculation." The BIA affirmed the IJ's decision and denied Njuguna's motion to re-open.

#### Jurisdiction

We have jurisdiction to review final orders of removal. 8 U.S.C. § 1252(a)(1). Jurisdiction over the order removing **Njuguna** arose when he timely filed a petition for review in this court. *See* 28 U.S.C. § 2349(a).

#### Discussion

I. Standard of Review

We review for substantial evidence the BIA's decision that an applicant has failed to establish eligibility for asylum. *Nagoulko v. INS*, 333 F.3d 1012, 1015 (9th Cir. 2003); *Molina-Morales v. INS*, 237 F.3d 1048, 1050 (9th Cir. 2001). Our review is limited to the administrative record underlying the BIA decision. 8 U.S.C. § 1252(b)(4)(A). Every asylum application is deemed to include a request for a withholding of removal. 8 C.F.R. § 208.3(b). We also review for substantial evidence the BIA's determination that **Njuguna** has failed to meet the higher burden required for withholding of removal. *Thomas v. Ashcroft*, 359 F.3d 1169, 1174 (9th Cir. 2004).

{374 F.3d 770} II. Eligibility for Asylum

The Attorney General may grant asylum to a "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is one who is unwilling or unable to return to his or her native country because of past persecution, or a well-founded fear of future persecution, on account of the individual's race, religion, nationality, membership in a particular social group, or political opinion. *Id.* § 1101(a)(42)(A). **Njuguna** claims a

---

well-founded fear of future persecution in Kenya because of his political opinion.

A well-founded fear has both subjective and objective components. *Velarde v. INS*, 140 F.3d 1305, 1309 (9th Cir. 1998), *superseded by statute on other grounds as stated in Falcon-Carriche v. Ashcroft*, 350 F.3d 845, 854 n.9 (9th Cir. 2003). **Njuguna** established the subjective component with his credible testimony. *See Acewicz v. INS*, 984 F.2d 1056, 1061 (9th Cir. 1993). He has the burden of meeting the objective component by demonstrating a well-founded fear of persecution through credible, direct, and specific evidence. *See Velarde*, 140 F.3d at 1310. A "one in ten chance" that **Njuguna** will suffer persecution is enough. *Id.* (quoting *Montecino v. INS*, 915 F.2d 518, 520 (9th Cir. 1990)).

The treatment of Njuguna's Kenyan relatives amounts to persecution. They have been imprisoned, beaten, cut with machetes, and threatened with further physical harm. *See Navas v. INS*, 217 F.3d 646, 658 (9th Cir. 2000) (petitioner demonstrated persecution where he had been threatened with death, two of his family members were murdered, and his mother beaten); *Duarte de Guinac v. INS*, 179 F.3d 1156, 1161 (9th Cir. 1999) (physical harm consistently treated as persecution). **Njuguna** personally has not suffered persecution simply because his would be abusers cannot reach him. The lack of past persecution against him does not foreclose asylum eligibility. *Gonzalez v. INS*, 82 F.3d 903, 909-910 (9th Cir. 1996) (violence against family members supports a petitioner's well-founded fear if linked to petitioner). Some of the attacks against Njuguna's family were accompanied by specific threats against **Njuguna**.

In order to qualify for asylum based on a well-founded fear of persecution, the fear of persecution must be on account of one of the statutory grounds, here, political opinion. An asylum applicant may establish political opinion as the basis for persecution in three ways: 1) affirmative political beliefs; 2) political neutrality where such is hazardous; and 3) an imputed political opinion. *Sangha v. INS*, 103 F.3d 1482, 1488-89 (9th Cir. 1997). **Njuguna** has established an affirmative opinion in that he opposed the Moi government by his own testimony including his statements to Tuyoit. That **Njuguna**, however, subjectively holds an anti-Moi opinion is not, by itself, enough to establish that any future persecution would be "on account" of this opinion. He must establish that the political opinion would motivate his potential persecutors. An applicant need not establish this with direct evidence; compelling circumstantial evidence is enough. *INS v. Elias-Zacarias*, 502 U.S. 478, 483, 117 L. Ed. 2d 38, 112 S. Ct. 812 (1992). The only reasonable conclusion to be drawn from the administrative record is that events in Kenya were probably caused, at least in part, by Njuguna's words and actions in the United States.

Retaliation against an individual who has acted against government corruption can be "on account of" political opinion. *See Grava v. INS*, 205 F.3d 1177, 1181 (9th Cir. 2000). **Njuguna** characterized his assistance of Musembi and Wainjiku {374 F.3d 771} as an act against the Moi regime's corruption. So long as any future attacks would be at least in part retaliation for the rescue, they form the basis for asylum eligibility. *Borja v. INS*, 175 F.3d 732, 736 (9th Cir. 1999) (en banc).

The IJ determined (and the BIA accepted) that **Njuguna** testified credibly. Yet both the IJ and the BIA stated that large parts of his claim were "implausible." The BIA's entire analysis of Njuguna's asylum claim is that his credible testimony was "unsupported and implausible speculation."[3] **Njuguna** lacks first hand knowledge of events in Kenya, but the IJ's credibility finding compels a conclusion that he is accurately relating his family's accounts of events in Kenya. *Cf. Ladha v. INS*, 215 F.3d 889, 901 (9th Cir. 2000) (no corroboration required where alien's testimony is unrefuted and credible).

Faced with Njuguna's credible testimony, we disagree with the BIA that his claim is implausible speculation. Given the absence of any contradictory evidence, the testimony of Musembi, Hianyu's asylum application, and the country report which supports Njuguna's characterization of the conditions in Kenya, Njuguna's fears were not speculative. *See Gafoor v. INS*, 231 F.3d 645, 650-51 (9th Cir.

2000) (the applicant need only produce evidence from which it is reasonable to believe that the harm is motivated in part by a protected ground); *Borja*, 175 F.3d at 736 (same).

It would be one matter for the IJ to have concluded that **Njuguna** was not credible. Assuming **Njuguna** to be telling the truth, however, one cannot reasonably conclude that his Kenyan relatives have repeatedly lied or mischaracterized events in the absence of any apparent motive to do so and any contradictory evidence. The finder of fact may not circumvent a credibility finding by labeling compelling circumstantial evidence "speculative." Substantial evidence does not encompass the BIA's own speculation.4 *See Shoafera v. INS*, 228 F.3d 1070, 1075 (9th Cir. 2000); *Lopez-Reyes v. INS*, 79 F.3d 908, 912 (9th Cir. 1996). Any reasonable finder of fact would be compelled to conclude that **Njuguna** had a well-founded fear of persecution, and is therefore eligible for asylum.

### III. Withholding of Removal

Having found no substantial evidence underlying the BIA's asylum determination, we turn to its conclusion that {374 F.3d 772} **Njuguna** did not meet his burden for the mandatory remedy of withholding of removal. In contrast to asylum, where the "possibility" of persecution is sufficient, to receive withholding of removal, **Njuguna** must show that it is more probable than not that he will face persecution on account of a protected ground upon his deportation to Kenya. *INS v. Stevic*, 467 U.S. 407, 424, 81 L. Ed. 2d 321, 104 S. Ct. 2489 (1984); *Velarde*, 140 F.3d at 1309. As mentioned above, **Njuguna** lacks direct knowledge of events in Kenya, but the evidence that he presents is compelling.

**Njuguna** expressed his opposition to the Moi regime to his politically well-connected roommate, Tuyoit. Tuyoit told others that he would make **Njuguna** pay. When Njuguna's attorney, Musembi, and Wainjiku went to the Kenyan consulate to pick up the women's passports, a Kenyan official told them that they "all" would "face consequences." **Njuguna** submitted evidence that these were not idle threats. Government police ransacked Njuguna's family home in Kenya and imprisoned and beat his father. Pro-government militias attacked Njuguna's brother. The perpetrators of both of these attacks accompanied their abuse with accusations that members of the family had joined with foreigners to defame and humiliate Kenya in the United States. Credible testimony of multiple witnesses related to the IJ all of the events occurring in the United States and the IJ found that **Njuguna** credibly testified to what his relatives told him of events in Kenya.

We have found that similar evidence compels the conclusion that the petitioner is entitled to withholding of removal. In *Salazar-Paucar v. INS*, we held that threats from Shining Path guerrillas combined with harm inflicted on family members constituted past persecution and thus entitled the petitioner to a presumption that future persecution was likely. 281 F.3d 1069, 1074-75 (9th Cir. 2002). Similarly, in *Tagaga v. INS* the record compelled the finding that future persecution was more likely than not where military officials threatened to try the petitioner for treason upon his return. 228 F.3d 1030, 1035 (9th Cir. 2000).

There is no evidence that the abuse inflicted upon Njuguna's family came from a source other than the Moi regime. *See Cardenas v. INS*, 294 F.3d 1062, 1066 (9th Cir. 2002) (holding that record compelled conclusion that telephoned threat came from persecutors in absence of evidence to the contrary). It would be unrealistic to expect Njuguna's Kenyan relatives to appear and to testify about their treatment at the hands of the government and pro-government militias. We cannot find substantial evidence where there exists only speculation. Given Njuguna's credibility and the lack of any contradictory evidence, the BIA's denial of withholding of removal is not supported by substantial evidence, and we grant Njuguna's petition on that ground as well.

### Conclusion

We grant Njuguna's petition for review. We vacate the BIA's denial of withholding of removal and asylum, grant withholding of removal, hold **Njuguna** eligible for asylum, and remand to the Attorney General to exercise his discretion whether to grant asylum.

PETITION FOR REVIEW GRANTED. REVERSED AND REMANDED.



*Office of Detention and Removal Operations*

**U.S. Department of Homeland Security**
**Northwest Detention Center**
**1623 E. J Street**
**Tacoma, WA 98421-1615**

# U.S. Immigration
# and Customs
# Enforcement

July 12, 2007

David NJENGA  (A91-738-632)
Northwest Detention Center
1623 E. J Street
Tacoma, WA 9842128

Dear Mr.Njenga;

An officer of Immigration and Customs Enforcement (ICE) has recently reviewed your case.  The officer has presented the results of that review to me so that I may make a decision regarding your custody status.

Therefore, pursuant to the authority contained in section 236 and 241 of the Immigration and Nationality Act, and parts 236 and 241 of the Code of Federal Regulations, I have determined that you shall continue to be detained in the custody of ICE pending the result of your appeal before the Ninth Circuit Court of Appeals.

Your case will be reviewed again in approximately one year.  You should receive notice of interview approximately 30 days prior to the scheduled review.  During that review the officer will examine the factors set forth at the bottom of this letter.  There may be other particulars to your case as well.

A. Neil Clark
Field Office Director
Seattle, WA

05/27/04  THU 13:11 FAX 415 844 5514          SFR/DDP #2

U.S. Department of Justice                              **Order of Supervision-Addendu**
Immigration and Naturalization Service

File No: A91 738 632
Date: **May 27, 2004**

Name: NJENGA, David Mungai

☒ That you do not associate with known gang members, criminal associates, or be associated with any suc
activity.

☐ That you register in a substance abuse program within 14 days and provide the INS with written proo
such within 30 days. The proof must include the name, address, duration, and objectives of the program a
as the name of a program counselor.

☐ That you register in a sexual deviancy counseling program within 14 days and provide the INS with wr
proof of such within 30 days. You must provide the INS with the name of the program, the address of the
program, duration and objectives of the program as well as the name of a counselor.

☐ That you register as a sex offender, if applicable, within 7 days of being released, with the appropriate
agency(s) and provide the INS with written proof of such within 10 days.

☒ That you do not commit any crimes while on this Order of Supervision.

☒ That you report to any parole or probation officer as required within 5 business days and provide the
with written verification of the officers name, address, telephone number, and reporting requirements.

☐ That you continue to follow any prescribed doctors orders whether medical or psychological including
prescribed medications.

☒ That you provide the INS with written copies of requests to Embassies or Consulates requesting the is
of a travel document.

☒ That you provide the INS with written responses from the Embassy or Consulate regarding your requ

☒ Any violation of the above conditions will may result in revocation of your employment authorization
document.

☒ Any violation of these conditions may result in you being taken into Service custody and you being cri
prosecuted.

☒ Other. You will report as directed or you will be taken into custody and your release will be revoked

PTI-R353



U.S. Department of Justice
Immigration and Naturalization Service

*650 Capitol Mall*
*Sacramento, CA 95814*

February 25, 2003

MEMORANDUM FOR    TIMOTHY S. AITKEN
DEPUTY ASSISTANT DISTRICT DIRECTOR
SAN FRANCISCO, CALIFORNIA

FROM:    Jeffrey S. Tipton
Supervisory Detention & Deportation Officer
Sacramento, California

SUBJECT:    **NJENGA, David; A91 738 632**

On February 24, 2003, I spoke to Mr. Njenga as per your request (see attached sworn statement). I asked him how he felt about being returned to Kenya. He stated that he would be killed if returned to Kenya. I then asked him if we placed him on a flight to Kenya today, how would he react. He stated that he would ask for a week's notice in order put his affairs in order and to prepare his will for his children. I then asked him if he were provided a week's advance notice prior to his removal, would he cooperate with his removal and pose no problem. He stated that he would cooperate with no problem. Mr. Njenga was advised today of his imminent removal. Mr. Njenga remained calm during our conversation.

PTZ-R175

 

**U.S. Homeland Security**
Immigration and Customs Enforcement

*San Francisco District*
*630 Sansome Street*
*San Francisco, CA 94111*

May 21, 2004

NJENGA, David Mungia/A91 738 632
c/o US ICE

## Release on Bond Notification

You are currently detained in the custody of Immigration and Customs Enforcement (ICE). You have been ordered removed from the United States. Your removal does not appear reasonably foreseeable at this time.

Upon re-reviewing your case, ICE has concluded that you will be released from ICE custody, pending your removal, under an Order of Supervision upon the posting of a $10,000 bond. Your release will be subject to certain conditions that will be outlined on the Order of Supervision (I-220B). The bond is set to ensure that you abide by the conditions of your release. Any violation of these conditions will result in the bond being breached, as well as you being taken back into ICE custody. These conditions include but are not limited to monthly reporting in person to an ICE office, and proof of <u>continuous good faith</u> efforts to obtain a travel document from the Government of Kenya, within 60 days of your release. This release does not effect <u>your removal order</u> and does not constitute an admission to the United States.

It is particularly important that you keep ICE advised of your address at all times. We will continue to make efforts to obtain your travel document that will allow the United States government to carry out your removal pursuant to your order of deportation, exclusion, or removal. You are required by law to cooperate in that effort and to continue to make good faith efforts to secure a travel document on your own. Once a travel document is obtained and your case has been completed, you will be required to surrender to ICE for removal. You will, at that time, be given an opportunity to prepare for an orderly departure.

_____
Signature of Field Office Director/Designated Representative

5/21/04
Date

PTI - R341



FILED
LODGED
ENTERED
RECEIVED

JUL 2 5 2003

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY    WESTERN DISTRICT OF WASHINGTON
DEPUTY

03-CV-00764-ORD

8    UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9    AT SEATTLE

10

11    DAVID M. NJENGA,                    )
)
Plaintiff,                      )    CASE NO.    C03-764P
12                                       )
v.                              )
13                                       )
JOEL HOUSTON, et al.,               )    ORDER PERMITTING PLAINTIFF
14                                       )    TO FILE THIRD AMENDED
Defendants                      )    COMPLAINT
15                                       )
_____)

16
        This is a civil rights action brought pursuant to 42 U.S.C. § 1983.  Currently before the
17
Court is plaintiff's second amended complaint which was filed in response to this Court's May
18
20, 2003, Order declining to serve plaintiff's first amended complaint and granting plaintiff leave
19
to file a seconded amended complaint correcting certain specified deficiencies.  A review of
20
plaintiff's second amended complaint reveals that it is deficient as well.
21
        Plaintiff identifies Seattle Police Officer Joel Houston as a defendant in his second
22
amended complaint and alleges that Officer Houston violated plaintiff's right to counsel and
23
disclosed confidential information to Kenyan authorities.  However, while other documents
24

25    ORDER DISMISSING SOME
DEFENDANTS AND DIRECTING
26    SERVICE - 1

PT2-R382

1    contained in the record suggest facts which might support this claim, plaintiff has not alleged any

2    of those facts in his second amended complaint. If plaintiff wishes to pursue his claims against

3.   Officer Houston, he must specifically allege which constitutional rights he believes Officer

4    Houston violated by his conduct and *all* facts which he believes support the alleged constitutional

5    violation. Plaintiff should include in his recitation of the facts the precise date(s) on which the

6    alleged constitutional violations occurred.

7        Plaintiff also identifies as defendants in his second amended complaint Iscah Birech,

8    Susan Gidali, Cynthia Waweru, and Grace Kamau. It appears that these four individuals are

9    somehow associated with the Kenya Police and were, at the time of their alleged misconduct,

10   acting under the authority of the Kenyan government. Nothing in the record suggests that these

11   individuals were at any time acting "under color of any statute, ordinance, regulation, custom, or

12   usage, of any State or Territory or the District of Columbia," and, thus, they are not subject to

13   suit in this civil rights action. *See* 42 U.S.C. § 1983.

14       Based upon the foregoing, the Court does hereby find and ORDER as follows:

15       (1)    Plaintiff shall be permitted one more opportunity to submit a serviceable

16   complaint to the Court. Plaintiff may file a third amended complaint curing the above-mentioned

17   deficiencies not later than *August 29, 2003*. The third amended complaint must carry the same

18   case number as this one. If no amended complaint is timely filed, the Court will recommend that

19   this matter be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon

20   which relief can be granted.

21       Plaintiff is once again advised that an amended pleading operates as a *complete* substitute

22   for an original pleading. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.) (citing *Hal*

23   *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (as

24   amended), *cert. denied*, 506 U.S. 915 (1992). Thus, if plaintiff chooses to file a third amended

25   ORDER DISMISSING SOME
     DEFENDANTS AND DIRECTING
26   SERVICE - 2

PT-2-R381

1   complaint, the Court will not consider any of the allegations contained in plaintiff's prior

2   complaints.

3       (2)    Plaintiff's recently filed motion alleging additional violations by defendants (Dkt.

4   No. 24) is STRICKEN. It appears that plaintiff is, in effect, attempting to supplement his

5   complaint with the filing of the instant motion. If plaintiff wishes to proceed on these additional

6   allegations, he should incorporate them into his third amended complaint.

7       (3)    The Clerk is directed to send plaintiff the necessary forms so that he may file his

8   third amended complaint. The Clerk is further directed to send copies of this Order to plaintiff

9   and to the Honorable Marsha J. Pechman.

10      DATED this _____ day of _____, 2003

11

12

13  MONICA J. BENTON
    United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25  ORDER DISMISSING SOME
    DEFENDANTS AND DIRECTING
26  SERVICE - 3

PT2-R380



## Institutional / Disciplinary Record

**Did the detainee have prior Disciplinary Reports?** ☐ Yes ☒ No

    If Yes, List & Describe:

    Source:

**Disciplinary reports and Incidents while in INS Custody?** ☐ Yes ☒ No

    If Yes, List & Describe:

    Source:

## Specifics of Review

**Date of File Review**: April 29, 2004

**Date of Detainee Interview**: (optional) N/A

**Location of Interview**: N/A

**Reviewing/Interviewing Officer**: #1:

                    #2:

**Interpreter Used:** (If subject was interviewed) ☐ Yes ☐ No
**Name:**
**Language/Dialect:**

**Discussion at interview/review:**

# File Review only

PTI- R333



**Travel Document Status/History:**

List aliens attempts to get travel documents and status (to include any actions alien has taken to *prevent* removal, and date of service of I-229(a) and Instruction Sheet to Detainee):

02/11/03 – Received travel document from Consulate General of Kenya

01/13/03 – Subject served with Notice to Alien of File Custody Review

05/08/03 – Subject served with second Notice to Alien of File Custody Review

06/05/03 – Post Order Custody Review completed release upon posting $50k bond

06/05/03 – Subject served I-286 $50k

09/26/03 – Subject served new I-286 new conditions no bond

03/23/04 – Subject served Notice to Alien of File Custody Review

List Service attempts to get travel document and status:

02/11/03 – Valid travel document from Consulate of Kenya

PTI – R332

**Does the detainee have a place to live in the United States?**  ☒ Yes   ☐ No
   Describe:       501 Rivergate Way #258, Sacramento, CA 95831
                   Lynn Elaine McNeill (916) 391-6896

**Is the detainee subject to any parole or probation requirements?**  ☒ Yes   ☐ No
   Describe:       on Parole until 08/2005

**Does the detainee have close family ties within the United States?**  ☒ Yes   ☐ No
   Describe:       Friends in Sacramento, CA
                   Children in Seattle, WA area

**Does the detainee have community ties or non-governmental sponsors?**  ☐ Yes   ☒ No
   Describe:       Unknown no information submitted

**Does the detainee have any employment prospects?**  ☒ Yes   ☐ No
   Describe:   Babies for Love (DAB) Foundation
               9034 Casals St. #B, Sacramento, CA 95826 (916) 761-2116
               Troy Co. Inc. 603 Stewart St. Suite 616,
               Seattle, WA 98101  (206) 448-3539

**What is the detainee's employment history?**
   Describe:    Several different Temporary agencies, primarily warehouses

**What is the detainee's educational level?**
   Describe:    States Bachelor of Arts Degree no proof found in file

**Does the detainee have any vocational training?**  ☐ Yes   ☒ No
   Describe:    Unknown no information submitted

**Has the detainee submitted any evidence of rehabilitation, courses while in prison, etc?**
   Describe:    Unknown no information submitted

## Medical/Psychological Concerns

**Medical/Psychological Report / Summary:**   ☐ Attached   ☒ None

**Date and Source:**

**Other documentary evidence for consideration in this review:**

Letters submitted

PTI - R 321

# Officer Comments/Analysis & Recommendation

**NOTE: Per file review only.**

The subject is a 43-year old male, native and citizen of Kenya, with a final order of removal dated April 8, 1998. The subject entered the United States as an EWI on March 1, 1979. The subject is currently in Agency custody due to arrests and convictions for false IRS claims, Use of Fraud Social Security Card and Grand theft.

Positive factors: The subject has submitted letters of support and employment opportunities. He was notified of the upcoming review by service on March 23, 2004.

Negative Factors: Per file review, the subject has a criminal history dealing with money. Subject has made a career out of fraud Agencies include the former INS by posting a $50k bond using fraudulent checks. The subject also has a history of failing to appear upon request.

After carefully reviewing the subject's file and the subject's criminal history there are no crimes involving violence. As well, the subject has no new convictions. If the subject is released, the subject will be on living with his spouse, who resides in the Sacramento, CA area. The subject was previously allowed to be released from Agency custody upon posting a bond in the amount of $50k. In light of these facts, I recommend the subject be released on an order of supervision with the stipulation that he reports at the minimum twice a month after posting a minimum bond of $25k.

---

Reviewing Officer #1
Name/Title: Mazic A. Mascr / DO
Date: 4/29/2004
Signature:

Reviewing Officer #2    *Concur*
Name/Title: C. Meyer, SDDO
Date: 4-25-4
Signature:

Supervisory Reviewing Officer
Name/Title:
Date:
Signature: — Concur
4/29/04

PTI- R 330

## DECIDING OFFICIAL'S CUSTODY DETERMINATION

☒  RELEASE FROM CUSTODY / ORDER OF SUPERVISION

☐  CONTINUE IN CUSTODY          *under bond $25K*

Comments:

INS District Office:

Signature of Deciding Official: _____          Date: 4/29/04

Deciding Official Name and Title:  Field Office Director

(Rev. 10/30/02)                              Page 8

PTI - R329

CS CASE SUMMARY (CASS)                    DATE: 04/29/2004
                                          TIME: 11:49:28

        A-NUM : 091738632      LAST-NAME : NJENGA
        NATLTY: KENYA          FIRST-NAME: DAVID

    SFR CASE-CAT: 2B   OFF-ID C23   CALL-UP-DATE: 04/29/2004   CHARGE-IN: D1B
  .-DATE: 03/01/1979   ENT-CLASS: WI   ENT-PLACE: SEA      SP-CLASS:  NO
 .-FELON: OT                     MAND-DET: Y              ALERT-CODE: A

 CRIME: Y    JAIL: N    DETENTION: Y    COMMENTS: Y    BOND: B    REL-FILE: N

FILE-LOC : DRO/TRAVEL   APPR-DATE: 11/17/1993   APPR-PLACE : OAKDALE, LA
DATE-TD-REQ: 12/24/2002    DATE-TD-REC:              DATE-TD-EXP:
PRIO-DATE:                 PREF:

ATTY-ID  :             LOCAL-FGN-CHK-DATE:              I-94:
DATE-FWD-TO-TA: 10/03/1994      DATE-TO-INV:
CONSUL-NOTF-DATE:

        DATE-ENTERED: 08/25/1992   DATE-LAST-UPDATE: 04/26/2004

        COMMAND: CASS    A-NUM: 091738632

CRAIG
Why 2B 2
NA

PTI-R 328

## Additional Information for Applicants and Petitioners

**General:**
The filing of an application or petition does not in itself allow a person to enter or remain in the United States and does not confer any other right or benefit.

**Inquiries:**
If you do not hear from us within the processing time given on this notice and you want to know the status of this case, contact your local INS office.

You should also contact your local INS office if you have questions about this notice.

Please have this form with you whenever you contact a local office about this case.

**Requests for Evidence:**
If this notice asks for more evidence, you can submit it or you can ask for a decision based on what you have already filed. When you reply please include a copy of the other side of this notice and also include any papers attached to this notice.

**Reply Period:**
If this notice indicates that you must reply by a certain date and you do not reply by that date, then we will issue a decision based on the evidence on file. No extension of time will be granted. After we issue a decision any new evidence must be submitted with a new application or petition, motion or appeal, as discussed under "Denials."

**Approval of a Petition:**
Approval of an immigrant or nonimmigrant petition means that the person for whom it was filed, called the beneficiary, has been found eligible for the requested classification. However, approval of a petition does not give any status or right. Actual status is given when the beneficiary is given the proper visa and uses it to enter the United States. Please contact the appropriate U.S. Consulate directly if you have any questions about visa issuance.

For nonimmigrant petitions, the beneficiary should contact the consulate after he or she receives our approval notice. For approved immigrant petitions, the beneficiary should wait to be contacted by the consulate.

If the beneficiary is now in the United States and believes he or she may be eligible for the new status without going abroad for a visa, then he or she should contact a local INS office about applying here.

**Denials:**
A denial means that, after every consideration, INS has concluded that the evidence submitted does not establish eligibility for the requested benefit.

If you believe there is more evidence that will establish eligibility, you can file a new application or petition or you can file a motion to reopen this case. If you believe the denial is inconsistent with precedent decisions or regulations, you can file a motion for reconsideration.

If the front of this notice states that this denial can be appealed and you believe the decision is in error, you can file an appeal.

You can obtain more information about these processes from your local INS office.

PTI-0222

**U. S. Department of Justice**
Immigration and Naturalization Service

Notice of Acti

| Applicant/Petitioner A # | Application/Petition    I130 |
|---|---|
| A43 273 349 | IMMIGRANT PETITION FOR RELATIVE, FIANCE(E), OR ORPHAN |
| Receipt # | Applicant/Petitioner |
| WAC-93-083-51056 | KARUGA, HEZRON NJENGA |
| Notice Date          Page | Beneficiary       A91 738 632 |
| June 23, 1993        1 of 1 | NJENGA, DAVID MUNGAI |

HEZRON N. KARUGA
PO BOX 2638
DUBLIN CA 94568

և|ևմ||մ||մ||մ||մ|

Approval Notice
Class: F24
Priority Date: February 1, 1993

Notice also sent to:

The above petition has been approved.

We have sent it to the Department of State Immigrant Visa Processing Center (TIVPC),
Suite 700, 1401 Wilson Blvd, Arlington, VA 22209.

This completes all INS action on this petition.  The Department of State Immigrant
Visa Processing Center will communicate shortly with the person the petition is fo
concerning further immigrant visa processing steps.

Please read the back of this form carefully for more information.

PTI-R223

You will be notified separately about any other applications or petitions you filed. Save this notice. Please enclose a copy of it
if you write to us about this case, or if you file another application based on this decision. Our address is:
    IMMIGRATION & NATURALIZATION SERVICE
    WESTERN SERVICE CENTER
    P. O. BOX 30111
    LAGUNA NIGUEL CA 92607-0111
    Tel: (714) 643-4880





**U.S. Department of Justice**
Immigration and Naturalization Service

SFR 50/10

*630 Sansome Street*
*San Francisco, CA 94111*

NJENGA, David Mungia                                    A91 738 632
C/O IN SERVICE CUSTODY

## Notice to Alien of File Custody Review

You are detained in the custody of the Immigration and Naturalization Service (INS) and you are required to cooperate with the INS in effecting your removal from the United States. If the INS has not removed you from the United States within the removal period as set forth in INA 241(a) (normally 90-days) of either: 1) your entering INS custody with a final order of removal, deportation or exclusion, or 2) the date of any final order you receive while you are in INS custody, the INS District Director will review your case for consideration of release on an Order of Supervision. Release, however, is dependent on your demonstrating to the satisfaction of the Attorney General that you **will not** pose a danger to the community and **will not** present a flight risk.

Your custody status will be reviewed on or about: **(February 15, 2003)** . The District Director may consider, but is not limited to considering the following:

1. Criminal convictions and criminal conduct;
2. Other criminal and immigration history;
3. Sentence(s) imposed and time actually served;
4. History of escapes, failures to appear for judicial or other proceedings, and other defaults;
5. Probation history;
6. Disciplinary problems while incarcerated;
7. Evidence of rehabilitative effort or recidivism;
8. Equities in the United States;
9. Cooperation in obtaining your travel document; and
10. Any available mental health reports.

You may submit any documentation you wish to be reviewed in support of your release, prior to the date listed above, to the attention of the Officer and address below. English translations must be provided pursuant to 8 CFR 103.2(b)(3). An attorney or other person may submit materials on your behalf. The district director will notify you of the decision in your case. Attached to this notice is a list of free or low cost legal representatives who may be able to provide assistance to you in preparing your case.

U.S. Department of Justice
**Immigration and Naturalization Service**
Attn: Assessment Officer
P. O. Box 26829
San Francisco, CA 94126

---

## METHOD OF SERVICE

I certify that this form was provided to the alien by:          (Hand)                    (Institution Mail)
( ) CC: Attorney of Record or Designated Representative
( ) CC: A-file

---

Signature of Officer                    Print Name of Officer                    Date

PTI-R231





**U.S. Department of Homeland Security**
Immigration and Customs Enforcement

SFR DRO 50/10

*Office of the Field Director*

630 Sansome Street, Room 590
*San Francisco, CA 94111*

NJENGA, David
C/O IN SERVICE CUSTODY

A91 738 632

# Notice to Alien of File Custody Review

You are detained in the custody of the Immigration and Customs Enforcement (ICE) and you are required to cooperate with the ICE in effecting your removal from the United States. If the ICE has not removed you from the United States within the removal period as set forth in INA 241(a) (normally 90-days) of either: 1) your entering ICE custody with a final order of removal, deportation or exclusion, or 2) the date of any final order you receive while you are in ICE custody, the ICE District Director will review your case for consideration of release on an Order of Supervision. Release, however, is dependent on your demonstrating to the satisfaction of the Attorney General that you will not pose a danger to the community and will not present a flight risk.

Your custody status will be reviewed on or about: <u>(April 29, 2004)</u> . The (I) Field Office Director may consider, but is not limited to considering the following:

1. Criminal convictions and criminal conduct;
2. Other criminal and immigration history;
3. Sentence(s) imposed and time actually served;
4. History of escapes, failures to appear for judicial or other proceedings, and other defaults;
5. Probation history;
6. Disciplinary problems while incarcerated;
7. Evidence of rehabilitative effort or recidivism;
8. Equities in the United States;
9. Cooperation in obtaining your travel document; and
10. Any available mental health reports.

You must submit any documentation you wish to be reviewed in support of your release, prior to <u>(April 22, 2004)</u>, to the attention of the Officer and address below. English translations must be provided pursuant to 8 CFR 103.2(b)(3). An attorney or other person may submit materials on your behalf. The (I) Field Office Director will notify you of the decision in your case. Attached to this notice is a list of free or low cost legal representatives who may be able to provide assistance to you in preparing your case.

U.S. Department of Homeland Security
**Bureau of Immigration and Customs Enforcement**
Attn: Assessment Officer
P. O. Box 26829
San Francisco, CA 94126

METHOD OF SERVICE          SAC Co Jail

I certify that this form was provided to the alien by:
( ) CC Attorney of Record or Designated Representative          (Hand)          (Institution Mail)
(x) CC A-file          Dianna Sucrese          3/23/04

Signature of Officer          Print Name of Officer          Date

PTI-R303

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
SAN FRANCISCO, CALIFORNIA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | NO. A91-738-632 |
| | ) | |
| DAVID MUNGAI NJENGA, | ) | RESPONDENT'S MOTION TO |
| | ) | CHANGE VENUE FOR BOND |
| Respondent. | ) | HEARING ONLY |
| | ) | |

## MOTION

The respondent in the above-captioned case/proceedings, David Mungai Njenga, by and through his counsel, Gabriel I. Banfi, of Seattle, Washington, for Bond Hearing only, hereby moves to change venue in these proceedings from San Francisco, California, to Seattle, Washington, for purposes of conducting a Bond Hearing only:

1.     Respondent fled persecution in Kenya and entered the United States on or about May 5, 1988, near Blaine, Washington. Respondent filed an application for asylum and withholding of deportation which is still pending before the Executive Office for Immigration Review in San Francisco, California.

2.     After bonding out of detention in San Francisco, California, respondent continued to reside in the San Francisco metropolitan area. His present address is 22280 South Garden Street, Hayward, California, 94541.

RESPONDENT'S MOTION
TO CHANGE VENUE - 1

**328**
PTI-L925

GEHRKE & BANFI
Attorneys at Law
28th Floor, Smith Tower
506 Second Avenue
Seattle, Washington  98104
(206) 682-2973
Fax (206) 292-1165

documentation pending; his father Hezron Njenga, legal permanent resident with naturalization documentation pending; his sister Elizabeth Njenga, United States citizen; his sister Esther Njenga, legal permanent resident; and his brother John Mbitu, refugee. All close family members reside in the San Francisco metropolitan area.

4.    Respondent has held employment in the United States while authorized by the Immigration and Naturalization Service. In the past, with a work authorization permit, Mr. Njenga has held a variety of jobs. His most recent employment was with Vort Services, Inc., in Pleasanton, California. At Vort Services, Inc., he was employed in marketing. However, his work authorization permit lapsed in mid-1996 and he has not worked while currently awaiting his asylum claim now scheduled for a hearing before the Executive Office for Immigration Review in San Francisco, California, on January 26, 1998.

5.    Respondent owns property in the United States, a condominium, with his sister Elizabeth Njenga, United States citizen. This condominium is located at 433 Crescent View Drive, Oakland, California. Respondent has co-owned this condominium with his sister since 1988.

6.    While visiting Washington State, present for a friend's funeral, Mr. David Njenga was arrested by local authorities and later detained by the Immigration and Naturalization Service. Mr. Njenga was arrested on October 23, 1997. After his arrest, he was transported to the INS detention center at 815 Airport Way South, Seattle, Washington. At that time, he was informed, through counsel, that the INS had revoked a Bond which he had posted during the pendency of his asylum application. Mr. Njenga has not been given a Bond Hearing, nor had a Bond set since October 23, 1997. In addition, Mr. Njenga has not been charged with a criminal offense, nor given notice of any criminal action since his detention on October 23, 1997.

RESPONDENT'S MOTION
FOR BOND REDETERMINATION - 2

GEHRKE & BANFI
Attorneys at Law
28th Floor, Smith Tower
506 Second Avenue
Seattle, Washington 98104
(206) 682-2973
Fax (206) 292-1165

325

PTI-1324

7.      Respondent, Mr. David Mungai Njenga, requests a Bond Hearing before the Executive Office for Immigration Review in Seattle, Washington, as soon as possible. Respondent has been held by the Immigration and Naturalization Service, without Bond or a Bond Hearing, since October 23, 1997. However, respondent has not been charged with a criminal offense, nor received notice of any criminal charge now pending.

8.      Respondent has received information from the Immigration and Naturalization Service, through counsel, that respondent's Bond was revoked due to on-going criminal activity. However, again, respondent has not been charged with a criminal offense, nor has he received notice of any criminal action at this time. Respondent has been held at the INS detention center in Seattle, Washington, without the opportunity to post Bond, nor the opportunity to set a Bond Hearing. Therefore, respondent requests that the Executive Office for Immigration Review schedule a Bond Redetermination Hearing in Seattle, Washington, where he is now being detained and where he has hired counsel to represent him solely for the Bond Hearing.

WHEREFORE, respondent requests that the Immigration Court grant respondent's motion to schedule a Bond Redetermination Hearing to the Immigration Court in Seattle, Washington.

DATED this 10 th day of November, 1997.


GABRIEL I. BANFI, WSBA #17810
Attorney for Respondent


RESPONDENT'S MOTION
FOR BOND REDETERMINATION - 3

GEHRKE & BANFI
Attorneys at Law
28th Floor, Smith Tower
506 Second Avenue
Seattle, Washington 98104
(206) 682-2973
Fax (206) 292-1165

David Mungai Njenga

A91-738-632

and Naturalization Service without bond, or the opportunity of a bond hearing, until November 20, 1997. The Immigration and Naturalization Service took the position that respondent be held without bond due to "on-going criminal activity." While being detained at the Immigration and Naturalization Service for close to a month, criminal charges were never filed against respondent. As of the filing of this appeal, criminal charges have still not been filed against the respondent in the State of Washington. Counsel for the service enumerated a variety of allegations against Respondent during the Bond Hearing. However, without a pending criminal charge in the State of Washington, these allegations are merely allegations and should not/cannot rise to the level of "on-going criminal activity" to the point where the Respondent is held pursuant to a $50,000 bond with the Immigration and Naturalization Service.

It was an abuse of discretion by the Immigration Judge to order that respondent be released from custody upon posting a bond of $50,000. The appropriate bond in the above-referenced case should be $5,000 reinstated, or in the alternative, $10,000. The facts of the case and the evidence presented by the Immigration and Naturalization Service do not merit such an exceptionally high bond of $50,000.

PT2-L26



**U.S. Department of Homeland Security**
San Francisco District Office
630 Sansome St.
San Francisco, CA



**U.S. Immigration
and Customs
Enforcement**

# Interoffice Memorandum

To: Nancy Alcantar
    Field Office Director

From: Mark A. Moser
      Deportation Officer

Date: May 20, 2004

Re: Custody Recommendation for NJENGA, David, A91 738 632

The above-mentioned Subject, a native and citizen of the Kenya, subject entered ICE custody on 08/05/2002. The Immigration Judge ordered subject removed in absentia on 03/02/1998. On 08/15/2002 the subject filed a Motion to Re open in absentia. On 12/12/2002 the Motion to Reopen was denied. On 03/25/2003 subject filed Habeas. On 03/28/2003 BIA grants stay pending Motion to Reopen. On 04/03/2003 the BIA denies reconsideration of the Motion to Reopen. On 04/07/2003 subject filed a stay and petition for review with the Ninth Circuit Court of Appeals (9cca). On 09/11/2003 the 9cca dismissed case. On 11/12/2003 subject filed a second stay and petition for review with the 9cca. On 11/17/2003 the BIA dismissed subject's case due to lack of jurisdiction. On 12/03/2003 9cca denies case as moot. On 12/05/2003 subject filed a second Motion to Reopen with the court auto stay. On 12/05/2003 subject filed a third stay and petition for review with the 9cca. On 12/30/2003 the subject's Motion to Reopen with the court was denied. On 03/01/2004 the 9cca granted a stay in subject's case. On 03/23/2004 the subject was served with a Release on Bond Notification, the subject would be released on an Order of Supervision upon posting a $25k bond. The subject has submitted request to lower the bond form $25k to $1,500.00 due to his financial situation.

With the subject's stay granted and petition currently pending before the 9^{th} Circuit Court of Appeals. I recommend that the subject's bond be reduced to a $10k bond with the stipulations of reporting every other week on the order of supervision.

*Concur*

*Concur with $1,900*

*Concur Reduce to $10K*

*Nalcant*

PTI - R340

 

**U.S. Homeland Security**
Immigration and Customs Enforcement

*San Francisco District*
*630 Sansome Street*
*San Francisco, CA 94111*

May 21, 2004

NJENGA, David Mungia/A91 738 632
c/o US ICE

### Release on Bond Notification

You are currently detained in the custody of Immigration and Customs Enforcement (ICE). You have been ordered removed from the United States. Your removal does not appear reasonably foreseeable at this time.

Upon re-reviewing your case, ICE has concluded that you will be released from ICE custody, pending your removal, under an Order of Supervision upon the posting of a $10,000 bond. Your release will be subject to certain conditions that will be outlined on the Order of Supervision (I-220B). The bond is set to ensure that you abide by the conditions of your release. Any violation of these conditions will result in the bond being breached, as well as you being taken back into ICE custody. These conditions include but are not limited to monthly reporting in person to an ICE office, and proof of continuous good faith efforts to obtain a travel document from the Government of Kenya, within 60 days of your release. This release does not effect your removal order and does not constitute an admission to the United States.

It is particularly important that you keep ICE advised of your address at all times. We will continue to make efforts to obtain your travel document that will allow the United States government to carry out your removal pursuant to your order of deportation, exclusion, or removal. You are required by law to cooperate in that effort and to continue to make good faith efforts to secure a travel document on your own. Once a travel document is obtained and your case has been completed, you will be required to surrender to ICE for removal. You will, at that time, be given an opportunity to prepare for an orderly departure.

_____
Signature of Field Office Director/Designated Representative

5/24/04
Date

PTI - R341

OCT 27 1993

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 92-0423-BAC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID NJENGA, | ) | |
| | ) | ORDER TO EXONERATE BOND |
| Defendant. | ) | |

Defendant having reported for service of his sentence of imprisonment and AUSA Sandra Teters having been apprised and having no objection, IT IS HEREBY ORDERED that the bond posted in this case be EXONERATED. Any property or money posted on defendant Njenga's behalf in the above captioned case shall be returned or reconveyed forthwith by the Clerk of Court.

So Ordered.

DATED: October 27, 1993

PHYLLIS J. HAMILTON
United States Magistrate Judge

-1-

PTI-487

**FILED**

UNITED STATES DISTRICT COURT

JUN 2 3 1993

NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| Plaintiff,  ) | No. CR-92-0423 BAC |
| v.  ) | ORDER FOR |
| David Njenga  ) | VOLUNTARY SURRENDER |
| Defendant.  ) | |

Defendant has requested permission to report voluntarily, at defendant's own expense, to the federal institution designated by the Attorney General for service of defendant's sentence:

IT IS ORDERED THAT:

(1)   A stay of execution of defendant's sentence is GRANTED on the conditions set forth below, and during the period of the stay defendant shall remain at large on defendant's present cognizance.

(2)   Defendant shall immediately report to the United States Marshal's Office, Room 20006, 450 Golden Gate Avenue, San Francisco, for further instructions, which defendant shall follow precisely.

(3)   Defendant shall report to the federal institution designated by the Attorney General on or before 2:00 p.m., or to the above office of the United States Marshal on or before 12:00 Noon, on _July 23, 1993_.

(4)   Any failure by defendant to obey all requirements of this order shall be punishable as a contempt.

FAILURE TO APPEAR as required in this order constitutes a separate offense, a violation of Section 3146 of Title 18, United States Code, and is punishable by additional imprisonment of up to five years.

Dated:

6/23/93

UNITED STATES DISTRICT JUDGE

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By _____
Deputy Clerk
Date _____

Document No.
37LK

District Court
Criminal Case Processing

A#91-73 8632

# BOND OBLIGOR RESPONSIBILITIES

FOR ELIZABETH NJENGA

1.   You must be able to present the Subject to an officer of this Service each and every time a demand is made of you.

2.   Each demand will be made either by personal service of via certified mail, return receipt. You should always keep this Service advised of you current address.

3.   The bond will remain in effect until the case is resolved. This means until the Subject is found to be legal in the United States or until a legal departure is verified.

4.   When the case is resolved, you will be notified by mail to return your original bond receipt for cancellation and return of your money.

5.   This Service does not keep your money.   It is held in the United States Treasury receiving interest. Your money will be returned you in the form of a United States Treasury check.

6.   It will take at least 6 to 8 weeks after your receipt is returned properly for you to receive the check.

7.   If you fail to receive notice and/or fail to surrender the Subject on demand, you will forfeit the bond.

8.   Your receipt should be kept in a safe place.   The original receipt is required for the return of your money.

9.   If you have any questions about this case, always remember to include the Subject's file number in you inquiry.

10.  If you ever have reason to believe you are not going to be able to guarantee the Subject's delivery to this Service upon our demand, you may have you bond cancelled by returning the Subject to the custody of this Service.

**REMEMBER TO ALWAYS KEEP THIS SERVICE ADVISED OF YOUR CURRENT ADDRESS. MAIL RETURNED AS "UNDELIVERABLE" DOES NOT RELIEVE YOU OF YOUR OBLIGATION(S).**

I have read and understand the above responsibilities.