FILED

NOV 2 0 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1  David Mungai Njenga
2  1623 E. J. STREET, SUITE 5, D2
   Tacoma, WASHINGTON 98421

**DETAINED**
**PRO SE**

3  **IN THE UNITED STATES DISTRICT COURT FOR THE**

4  **NORTHERN DISTRICT OF CALIFORNIA**

5  **AT OAKLAND**

6  In the Matter of              )  Case No:  C-07-5769-SBA
                                 )  A# 91-73-8632
7  David Mungai Njenga           )  **Emergency motion for humanitarian**
                                 )  **release to enable petitioner see his**
8     Petitioner,                )  **parents before they die and**
                                 )  **Petition For Bail Hearing**
9  V.                            )  **Pursuant To Kim v. Zigler**
                                 )
10 A Neil Clark,                 )
                                 )
11    Respondent.                )
                                 )
12                               )
                                 )
13 _____)

## MOTION

14      Comes now petitioner David Mungai Njenga a detainee at

15 Northwest Detention Center at Tacoma, Washington proceeding

16 PRO SE and MOVES THIS court to recommend a bond hearing and in

17 support hereof I state,

18 1) I have six United States citizen children and my wife is a

19 citizen of the United States

20 2) I am willing to pay a reasonable bond and be on supervised

21 parole.

22 3) my mother who is a legal permanent resident is so seriously

23 sick and I would like to be able to visit her at the hospital.

24 4) I am not subject to any criminal prosecution for failure to

25 depart from the United States.

## **PROCEDURAL HISTORY**

- Petitioner entered United States on March 2nd 1979 when he fled Kenya for fear of being persecuted following the death of President Jomo Kenyatta and after being named in the change the constitution group.

- Petitioner was targeted for his political contribution (see book title changed the constitution. Upon entering, the United States petitioner wrote two books-**my Daughter in Washington and child of two worlds, has co-authored Devil on the cross.**

- Sometime in 1992, I applied for asylum withholding of removal convention against torture and deferral of removal.

- Sometime in 1993, I was convicted for misuse of social security number a crime involving moral turpitude and sentenced to six months imprisonment. The immigration judge administratively terminated the proceedings.

- Sometime in 1993 after serving the sentence the immigration judge reopened the asylum proceedings granted my release on a five thousand (5,000) bond. A series of hearings were conducted between 1993 and 1997 and I never failed to appear on any one time let the record show.

- Some in 1996 the immigration judge granted my brother john Mbitu asylum but continued my case for a new merits hearings after the tape recorder malfunctioned.

- On October 23rd 1997, I visited the state of Washington for a business meeting as the president of sunset employment services and to attend a funeral.

- On that material day, an argument occurred between petitioner and one Mr. Joel Houston who was protesting his daughters lay-off. Mr. Houston happened to be a Seattle police officer.

- Petititioner called 911 after he noticed that Mr. Houston had a gun. Since Mr. Houston was, a police officer petitioner was arrested on fabricated frivolous charges later turned in to the former immigration and naturalization service detained and denied access to communicate with his attorney later notified that his $ 5,000 bond has been revoked.

- Petitioner retained a local Seattle attorney for bond hearing the immigration judge eventually granted petitioner bond in the amount of $ 50,000, which was tantamount to no bond as it, was so high intended to prevent petititioner from posting bond.

- Petitioner through counsel filed a timely appeal with the board of immigration appeals, before the board could render its decision on the reasonableness of such huge amount "by some miracles" petitioner was bonded out arrested by the Kenyan authorities and illegally repatriated to Kenya where he was detained and tortured and at sometime reported as dead by the Kenyan government. Petitioner was subjected to anal rape with soda bottles and petitioners daughter sexually

raped in the presence of petitioner. Petitioner's daughter was 13 at the time of she was raped.

- Sometime in 1999 petitioner managed to return to the United States using a Congo passport, a driver's license and a work permit crossed the Mexican border.

- Sometime in June 2002, petitiioner was again detained at Santa Rita county jail in alameda county California at the request of immigration and naturalization service.

- On august 5th 2002 1 was transferred to Yuba county jail notified of my in absentia order of deportation.

- On august 15th 2002 I filed a pro-se motion to reopen my asylum proceedings presented my corroborating evidence, which included the death announcement video tapes from **CNN** affiliate **KTN** who had conducted a live interview, which was televised nationwide where I was referred as the **DEAD MAN ALIVE**. My daughter also submitted an affidavit in my support, the immigration judge denied the motion to reopen citing that the death announcement was not sufficient, as she could not tell how it relates to petitioner the immigration judge also denied the motion to reopen because my daughter failed to sign her affidavit. Under the Kenyan laws, a minor is not required to sign any documents although she can be sworn in to tell the truth. She was willing to testify in open court.

- On December 12th 2002, the immigration judge denied the motion to reopen sent the denial order to the wrong address- hindering petitioner from knowing of the denial order.
- On February 2002, I filed a lawsuit against the Kenyan government served a copy to the Kenyan embassy in Washington DC.
- Upon receipt of the notice of the lawsuit, the Kenyan embassy hurriedly issued emergency travel documents to allow ICE to effectuate my removal so I can be taken to Kenyan and be killed. referring to comments by hon Raila Ondinga.
- On March 28th petitioner filed a habeas petition in this court case # CO2-5892 SBA. see also interoffice memorandum.
- On august 2002 petitioner was arrested and detained at Santa Rita county jail Alameda county then moved to Yuba county jail then Oakland city jail then Kern county jail then to Sacramento jail and back to Oakland city jail.
- On February 28th 2003 petitioner filed a petition for a writ of habeas corpus with this court case number CO2 5892 SBA and requested an emergency stay of removal.
- The court granted petitioner the stay and appointed counsel to represent petitioner in the case.
- On April 2004, petitioners custody status was review and granted release on bond of $ 10,000 and ordered released until such time that the case would be resolved (see attached

1  release order). Petitioner did not violate his release

2  conditions or commit any crimes.

3  • On January 12th 2007 petitioner was arrested and detained by

4  U.S. Immigration and Custom Enforcement (ICE) and detained at

5  northwest detention center where he currently remains until

6  present time.

7  • Petitioners bond obligor was never notified even requested to

8  surrender the alien (petitioner as promised) (see attached.)

9  • **Petitioner was told by the deportation officer that they**

10  **arrested him because the case is pending at the ninth circuit**

11  **and the court of appeals has granted stay of removal thus**

12  **petitioner is being punished for seeking a judicial review.**

13  • Petitioner challenges that arrest and detention without a

14  bond as illegal unconstitutional and a violation of due

15  process of the law.

16  • Petitioner has never been given an opportunity for a bond

17  hearing he is detained without a bond.

18  ## JURISDICTION.

19  Petitioner is not sure which district court has the

20  jurisdiction over this matter for the following

21  reasons.

22  Petitioner is currently detained at northwest

23  detention center Tacoma,  on the other hand

24  petitioners file still is in the jurisdiction of

25

sanfransisco immigration and all correspondence
related to this case goes through sanfrancisco.
Further  petitioner case was heard by the San
Francisco immigration judge who retains jurisdiction
over this case.
Due to this confussion petitioner has also filed another
petition with the western district of washington
Petitioner's immigration case was held in San Francisco and the
case manager in this case is located in San-Francisco
immigration office. Further if petitioners request for bond
hearing is granted the bond hearing will be conducted by the
immigration judge in San Francisco who first heard the case

## ARGUMENT

Petitioner challenges his mandatory detention pursusuant to
the immigration a naturalization act (INA $ 236 ( C),8 U.S,C
$1226 ( C) which mandates his detention without bond.

Petitioner argues that the mandatory detention provisionof
INA $ 236© should not be applied to him because his removal
proceedings  were initiated before the effective date of the
statue, October 9th 1998 and $ 1226© violates the due process and
equal protection clauses of the Fifth Amendment. See Reno
V.Flores,507 U.S.292,306,1231.Ed 1,113 s.ct1439(1993)CuiThon Ngo
V.INS,192F.3.d 390,336 (3rd cir1999). It is well established that
aliens have a right to due process under the Fifth Amendment.

1   Petitioner fundamental right to liberty is

2   unconstitutionally abridged by the mandatory detention

3   provision, see Fouch 504 U.S.71 at 80,112 s.ct 1780 118 L.Ed 2.d

4   437(1992)(freedom from bodily restrain has always been at the

5   core of the liberty protected by the due process clause)quoting

6   Danh v.Demore,59 F.SUPP.2d 994,1001-5(N.D.CAL1999)mandatory

7   detention provision violates due process. See Vea Eaton

8   V.Beebe,49 F.SUPP.2nd 1186,1190 (D.OR1999)(it)Martinez

9   V.Greene,28 F.supp.2d 12775 1282-84(D.COL 1998).

10   Detention incidents to removal must bear a reasonable

11   relation to this purpose. see Demore V.Kim,538I.S.510,527

12   (2003)detention of aliens that was unquestionably removable

13   where detention lasted on an average of 47 days is reasonably

14   related to prevention of flight risk); see

15   ZadvydasV.Davis,5333U,S.678,690(U.S2001).recently, ninth circuit

16   court of appeals has held that an alien is entitled to release

17   from detention after having been detained for over six months

18   because indefinite detention does not conform with the INAs

19   mandatory detention provision and the prolonged detention period

20   violates the aliens due process right to liberty.TijaniV.Willis

21   430F.3d 1241(9th cir 2005) per opinion of Noonan ,circuit judge

22   and opinion of Tashima,circuit judge concurring in

23   judgment).lastly length of confinement violates the due process

24   requirement of the constitution.id at 1249 (Tashima).

25   Concurring. Justice Tashima in his concurring opinion in Tijani

1  noted that ,there exists a point at which the length of

2  detention becomes so egregious that it can no longer be said to

3  be reasonably related to an alien's removal. Id at 1249. An

4  uncontested  stay of removal followed by prolonged

5  administrative detention is inconsistent with due process of

6  law.id at 1246.

7      After prolonged detention,Tijani requires the government to

8  provide the petitioner with a hearing before an immigration

9  judge where the government  must establish that the alien is a

10  flight risk or a threat to national security, and if not,

11  entitlement to release pursuant to a writ of habeas corpus .id

12  at 1242.

13      Furthermore ,the Supreme Court decision of Zadvydas

14  provides additional support to petitioner's writ. In Zadvydas

15  the Supreme Court held that the aliens cannot be subjected to

16  indefinite detention pursuant to 8 U.S.C $1231(a)(6), even if

17  they are deemed to be unlikely to comply with the order of

18  removal. See Zadvydas V.Davis,533 U.S.678(2001) omremand to

19  257F.3d 1095(9th cir 2001). The Supreme Court held inZadvydas

20  that an alien who has been ordered removed could not

21  indefinitely be held past six months period unless their removal

22  is reasonably foreseeable.id at 701.

23      Petitioner has been detained since 1997 with the exception

24  of those temporary releases and it is highly that there will be

25  an adjudication of the merits of his case within the next two to

1  three years. Pursuant to Zadvydas and Tijani petitioner should

2  be given the opportunity to fight his case outside of detention

3  and not pressured  into relinquishing his claim due to prolonged

4  indefinite detention that has now been imposed.

5      This habeas corpus proceedings under 28.U.S.$2241 concerns

6  the constitutionality of the prolonged detention of alien while

7  he waits a decision from the united states court of appeals on

8  his petition for review of a final order of removal.

9      Petitioner was released on bond and did not commit any

10  crimes and did not violate  release orders.

11      Petitioner further argues that he does not pose a risk of

12  flight as the record will show he was release on own recognance

13  during criminal proceedings and after conviction was given the

14  opportunity to self surrender and he complied with the order.

15      During asylum proceedings petitioner was always out on a $

16  5,000 attended all scheduled  hearings until 1997 when

17  miraculously was bonded out and prevented to attend his asylum

18  hearings which resulted in the in absentia deportation order of

19  1998.

20      On ............2007 a post order custody review of his status was

21  undertaken by DHS/ICE. No personal interview of petititioner

22  occurred with the connection with this custody review. Instead

23  ,only a file review was undertaken. The deportation officer

24  determined that detention should be continued because petitioner

25  has refused to withdraw his petition from the ninth circuit,

1  which has issued a stay of removal. (see regulation promulgated

2  at 8C.F.R4 241.4 explaining ;an alien who have filed a petition

3  for review of an order of removal but has not received a stay of

4  deportation is subject to the provision of 8USC 41231.detention

5  beyond the removal period may be maintained only upon compliance

6  with applicable process.

7      Prolonged detention raises substantial question of

8  constitutional dimensions. deportable aliens ,even those who

9  have already been ordered deported posses a substantive fifth

10  amendment liberty interest quoting Ly V.Hansen,351 F.3d 263,269

11  (6th cir 2003). Accordingly ,aliens under an order of removal are

12  entitled to an opportunity to be heard on the question of

13  prolonged detention and they may be kept locked up only if

14  incarceration is justified as was recognized in Ngo v. I.N.S 192

15  F.3d 390 397 (3rd cir 1999).

16      Regulations for parole have also been promulgated where a

17  criminal alien is held beyond  the removalperiod.see 8 C.F.R

18  $241.4. However, neither regulation nor statute clearly covers

19  an alien subject to final removal order  but whom the removal

20  period has been suspended by stay of removal. In Abubukar v

21  Ashcroft ,2004 U.S.dist Lexis 5998, # A 01-242,2004 WL 741759,at

22  3.(D.Minn.march 17th 2004 (rejecting as untenable the argument

23  that the alien had a

24      ,circuit judge and  without a bond hearing which

25  violates the fundamental right to liberty. See Fouch 504 U.S. 71

at 80 112 S. ct 1780, 118 L. Ed 2.d 437 (1992) "Freedom from
bodily restraint has always been at the core of the liberty
protected by Due process clause" quoting Danh v. Demore, 59 F.
Supp. 2d 994, 1001-5 (N.D) (cal 1999). Detention with bond or
bond hearing is unconstitutional. See Kim v. Zigler.

It also violation Due process quoting Vea Eaton v. Beebe,
49 F. Supp 2nd cir 1186 1190 (1999). Martinez v. Greene, 28
F.Supp 2nd 1275, 1282-84 (D-Col 1998).

Prolonged detention period violates the aliens Due process
rights to liberty. Tijani v. Willis, 430 F.3d 1241 (9th cir 2005).
It also violates the Due process requirement of the constitution.

As justice, Tashima in his concurring opinion in Tijani
noted, "there exist a point at which the length of detention
becomes so egregious that it can no longer be said to be
reasonably related to an alien removal."

After prolonged detention, Tijani requires the Government to
provide the petitioner with a hearing before an Immigration Judge
where the Government must establish that the Alien is a flight
risk or a threat to the national security and if not the alien
should be released on a reasonable bond.

Furthermore, the Supreme Court decision in Davis v.
Zadvydas, the Supreme Court held that, the alien cannot be
subject to indefinite detention pursuant to 8 U.S.C. 1231 (a)
(6). See Zadvydas v. Davis, 533 U.S. 678 (U.S. 2001) on remand to
257 F.3d 1095 (9th cir2001).

1    Petitioner has been detained altogether almost five years
2  and it is highly that there will be no adjudication of the merits
3  of his case within the next one to three years the review before
4  the ninth circuit can take up to four years.

5    Petitioner should be given an opportunity before an
6  Immigration Judge for a bond hearing.

7    On May 2007 a custody review was conducted by Department of
8  homeland security/U.S. Immigration and Customs Enforcement and no
9  personal interview was ever held instead only a file review was
10  undertaken.

11    The reviewing officer and the district director determined
12  that detention will be continued pending resolution of the case
13  by the U.S. Court of Appeal for the Ninth Circuit. See exhibit
14  (1).

15    Regulation promulgated at 8 U.S.C. § 241 states " An alien
16  who has filed petition for review of an order of removal but who
17  have not received a stay of deportation is subject to provision
18  of 8 U.S.C. § 1231." Detention beyond the removal period may be
19  maintained only upon compliance with applicable process.

20    Deportable Aliens, even those who have already been ordered
21  removed, posses a substantive Fifth Amendment liberty interest.
22  Ly v. Hansen, 351 F.3d 263, 269 (6th cir 2003). Accordingly,
23  aliens under an order of removal are entitled to an opportunity
24  to be heard.

25

1    The price of seeking justice under the law should not be
2    unnecessary incarceration. Section 241 (a) (1) (c) contemplates
3    action not taken in good faith by the alien, does not encompass
4    action taken by the alien to obtain judicial review of cognizable
5    claim.

6    Petitioner argues that the price of securing a judicial
7    review should not be a path for denial of Due process.

8    Petitioner argues that he **SHOULD NOT** be effectively punished
9    and made to suffer **psychological and economical hardship, which**
10   **will drag its effect on petitioner as well as petitioners united**
11   **states family for years to come for pursuing applicable legal**
12   **remedies**. As remarked in Ly, 351 F.3d at 279 an alien who would
13   not normally be subject to indefinite detention cannot be so
14   detained mainly because he seeks to explore avenues of relief
15   that the law makes available to him, further although an alien
16   may be responsible for seeking relief, he is not responsible for
17   time that such determination may take. Freedom from IMPRISONMENT
18   from Government, custody, detention, or other, forms of physical
19   restrain-lies at the heart of the liberty that the Fifth
20   Amendments Due process clause protects.

21   The risk of flight is non existence where an alien is
22   seeking to have legal status in the United States.

23   The court of Appeals indicated that custody decision based
24   solely on a file review without any opportunity to be heard in
25   person is inadequate Ngo, 192 F.3d at 398.

14

1  Petitioner in this case has strong family ties and entire

2  family resides in the Washington State and California bay area.

3  Petitioner did not violate any laws while out on bond and

4  order of supervised release; he does not have any disciplinary

5  infraction or incident report while in custody.

6  Petitioner argues that agency decision failure to provide

7  thorough and genuinely individualized hearings of bond

8  applications as they systematically exaggerate the risk factors

9  as quoted in Cabrera- Rojas, 999 F.Supp at 497.

10  The U.S. Court of Appeals for the Third Circuit held that

11  mandatory detention of aliens violates their Due process right

12  unless they have been afforded the opportunity for an

13  individualized hearing addressing the necessity of detention.

14  Patel 257, F.3d at 314. Petitioners have not been given such an

15  individualized hearing.

16  Most justices have reached the conclusion in cases

17  challenging the mandatory detention under 1226 (c) 241 of alien

18  pending the outcome of removal proceeding. See Sharma v.

19  Ashcroft, 158 F.Supp. 2d 524, 519 (Ed PA. 2001) U.S. v. Elwood,

20  2002 U.S. Dist. Lexis 15742 2001 WL 1167541 (ED. PA 2001) Dean v.

21  Ashcroft 176 F.Supp 2d 316 (DNJ 2001) Juarez ED 200. Chukwuezi v.

22  Reno, 2000 U.S. Dist. Lexis 15432 2000. They all stated "**We hold**

23  **that mandatory detention of aliens after they have been found**

24  **subject to removal but have not been yet ordered removed because**

25  **they are pursuing their administrative remedies violates their**

1  Due process right unless they have been afforded the opportunity

2  for an individualized hearing at which they can show that they do

3  not pose a flight risk or danger to community".

4      The fundamental requirement of Due process is the

5  opportunity to be heard at a meaningful time and meaningful

6  manner quoting Mathews v. Eldridge..., 424 U.S. 319, 333, 47 L

7  Ed. 2d 18, 96 S. ct 893 (1976). Armstrong v. Manzo, 380 U.S. 545

8  552, 14 L. Ed 2d 62 85 S. ct 1187 (1965). United States v.

9  Salermo, 481 U.S. 739, 746 98 L. Ed 2d 697, 107 S. ct 2095

10 (1987). Even civil confinement of alien must be limited both with

11 respect to the length of detention Id at 690, as well as to the

12 underlying purpose justifying the detention.

13      Petitioner has submitted his opening brief to the U.S. Court

14 of Appeals for the Ninth Circuit.

15 Petitioner filed for a writ of habeas corpus in the western

16 district of Washington petitioner has since learned that his

17 immigration jurisdiction lies in the San-Francisco office.

## <u>PRAYER FOR RELIEF</u>

19 Petitioner is about to lose his parents due to

20 illness actually the record will show that

21 petitioner has contributed his last dollar

22 towards the hospital bill of mother and would

23 like to be there for during her last days.

24      Wherefore, petitioner respectfully requests this court to

25 issue an order, order Department of Homeland Security, / U.S.

1  Immigration and Customs enforcement (DHS)/ (ICE) to grant

2  petitioner a bond hearing before an Immigration Judge within (7)

3  Seven days or in the alternative reinstate the original bond of

4  Five thousands U.S. Dollars ($5,000) U.S. Dollars.

5  2).Appoint counsel to represent petitioner in this matter so it

6  can be resolved amicably.

7  3.) This court has the authority to order release with or without

8  posting of bond where justice will be served.

9

10

11

12                                      Respectfully Submitted

13

14                              Dated this 30th day of October 2007

15                                      David M.Njenga

16

17  PRO SE

18

19

20

21              PROOF OF SERVICE

22  On this day, I David .M.Njenga a detainee and a party

23  to this cause certify that a copy of this petition was

24

25  mailed first class postage paid

To The Office of District Counsel.

At The Following 1000 SECOND AVENUE SUITE 2900

SEATTLE WA 98101

By: **First Class Mail** Postage paid mail, which was then

sealed and given to the Custody Officer, which is

considered properly served.

.................................                10-30-07
         Signature                        .................
                                                  Date

# BOND OBLIGOR RESPONSIBILITIES

1.   You must be able to present the Subject to an officer of this Service each and every time a demand is made of you.

2.   Each demand will be made either by personal service of via certified mail, return receipt. You should always keep this Service advised of you current address.

3.   The bond will remain in effect until the case is resolved. This means until the Subject is found to be legal in the United States or until a legal departure is verified.

4.   When the case is resolved, you will be notified by mail to return your original bond receipt for cancellation and return of your money.

5.   This Service does not keep your money.  It is held in the United States Treasury receiving interest. Your money will be returned you in the form of a United States Treasury check.

6.   It will take at least 6 to 8 weeks after your receipt is returned properly for you to receive the check.

7.   If you fail to receive notice and/or fail to surrender the Subject on demand, you will forfeit the bond.

8.   Your receipt should be kept in a safe place.  The original receipt is required for the return of your money.

9.   If you have any questions about this case, always remember to include the Subject's file number in you inquiry.

10.  If you ever have reason to believe you are not going to be able to guarantee the Subject's delivery to this Service upon our demand, you may have you bond cancelled by returning the Subject to the custody of this Service.

REMEMBER TO ALWAYS KEEP THIS SERVICE ADVISED OF YOUR CURRENT ADDRESS.  MAIL RETURNED AS "UNDELIVERABLE" DOES NOT RELIEVE YOU OF YOUR OBLIGATION(S).

I have read and understand the above responsibilities.

Signature _____ ELIZABETH NJENGA     Date _____
                 Obligor

Alien   David mungai Njenga          A# 91-738-632

## Washington



Office of Rep. Lucille Roybal-Allard, D-Calif.

**American dream:** Tam Tran, right, whose family was arrested, seen during May hearings on the DREAM Act with from left, Martine Mwanj Kalaw, Rep. Zoe Lofgren, Marie Nazareth Gonzalez, Rep. Lucille Roybal-Allard.

# Immigrant's family detained after daughter speaks out

By Kathy Kiely
USA TODAY

WASHINGTON — Three days after a 24-year-old college graduate spoke out on her immigration plight in USA TODAY, U.S. agents arrested her family — including her father, a Vietnamese man who once was confined to a "re-education" camp in his home country for anti-communist activities.

Rep. Zoe Lofgren, D-Calif., who chairs the House immigration subcommittee, on Tuesday accused federal officials of "witness intimidation" for staging a pre-dawn raid on the home of Tuan Ngoc Tran.

The agents arrested Tran, his wife and son, charging them with being fugitives from justice even though the family's attorneys said the Trans have been reporting to immigration officials annually to obtain work permits.

Lofgren said she believes the family was targeted because Tran's eldest child, Tam Tran, testified before Lofgren's panel earlier this spring in support of legislation that would help the children of illegal immigrants. On Oct. 8, Tam Tran was quoted in USA TODAY. Her parents and brother were taken into custody Thursday. The family was released to house arrest after Lofgren intervened.

"Would she and her family have been arrested if she hadn't spoken out?" Lofgren said of Tran, who was not at home for the raid but has been asked to report to Immigration and Customs officials next week. "I don't think so."

Kelly Nantel, a spokeswoman for U.S. Immigration and Customs Enforcement, said the Tran family's arrest "absolutely, unequivocally had nothing to do" with Tam Tran's advocacy. She said ICE agents began working on the case Sept. 28 and will now try to send the family to Germany, where the Trans lived for several years before coming to the United States. In the past, the German government refused the family's permission to return; Nantel said the U.S. government will now make an official request.

The raid marked the latest chapter in the Tran family's complex immigration odyssey. The family arrived in the USA 18 years ago from Germany, where the elder Trans ended up after the German navy rescued them at sea when they were escaping Vietnam.

Both Tam Tran and her brother, Thien, 21, were born in Germany, but they have lived in the USA since they were young. Tam Tran received a bachelor's degree with honors in American literature and culture in December from UCLA.

She has lobbied for the DREAM Act, which would give children of illegal immigrants a chance to, ob-

school degree and complete two years of postsecondary education or two years of [illegible]

In 2001, the [illegible] Immigration Appeals said the Tran family could not be deported to Vietnam because Tam's father had been persecuted there for his political beliefs. The board left open the possibility that the family could be sent to Germany, but if German authorities wouldn't give them [illegible]

Nantel said there are more than 324,000 people in the USA who have been [illegible] deported but who can't be sent away because no country will accept them. It's ICE's job to find a way to effect the judge's order, she said.

Bo Cooper, a Washington-based immigration attorney who this week agreed to take the Tran family's case free of charge, said he's puzzled that "the U.S. government would go and try to get at someone who doesn't have a criminal record, has no [illegible] when formal protection [illegible] of his treatment in [illegible] the Vietnamese [illegible]

[illegible] the Tran family [illegible] to immigration [illegible] why they [illegible] char[illegible] said a [illegible]

Myenga 91-73-8632
East-J-Street
...ma WA 98421

OE 37

CLERK OF COURT
U.S DISTRICT COURT (OAKLAND)
FEDERAL BUILDING
OAKLAND CA 94610